### 72395. POPE v. PROPST.
(345 SE2d 880)

DEEN, Presiding Judge.

The appellant/defendant, Jeff Pope, is a housing inspector with the Housing Code Enforcement Division of the DeKalb County Development Department. He claims that on August 18, 1981, he received a complaint as to the dilapidated conditions and health problems on Mrs. Propst's property. He made several visits to the property, visited with her elderly parents who live next door, and presented a written estimate of approximately $30,000 for the repairs needed to meet the housing code's requirements in order to avoid condemnation. When Mrs. Propst, who was mentally disabled following brain surgery, and her parents stated that they could not afford the repairs, Pope offered to buy the property for $21,000. He testified that he offered this price for the property based on its condition and the county tax records assessed value of $26,000, which he showed to the plaintiff's father. Pope drew up all the necessary papers for the closing and took Mrs. Propst and her parents to a bank to have the papers witnessed. The sale was consummated on September 15, 1981, and two months later Mrs. Propst moved into her parents' home.

Pope made no payments on the property until some four months later when Mrs. Propst first filed suit. That suit was transferred for venue reasons and then voluntarily dismissed without prejudice. The

present action was filed on March 30, 1983, by Mrs. Propst alleging that Pope persuaded her to sell her property by threats of condemnation, that he knew the purchase price was greatly inadequate, that the contract provision for cancelling the indebtedness on the death of the seller or buyer was unconscionable, that the consideration was greatly inadequate, that the defendant knew there was a great disparity between his mental abilities and those of herself and her elderly parents, that his position as a county employee created an atmosphere of friendship and trust, that he misrepresented the value of the house and extent of repairs needed to avoid condemnation, and that the representations were made with intent to deceive her. She further stated that she relied upon his representations because of his position as a county housing inspector and his deliberate attempts to create an atmosphere of friendship and trust. On May 23, 1984, the court entered an order substituting Mrs. Wildeson, Mrs. Propst's mother, as plaintiff because Mrs. Propst had been declared incompetent and her mother named as her guardian. This case was tried before a jury on September 9-13, 1985, and the jury awarded Mrs. Propst $24,000 plus $13,000 in punitive damages and $9,850 in attorney fees. Pope appeals from the judgment and denial of the motion for judgment notwithstanding the verdict and for a new trial, enumerating eleven errors.

1. Appellant's first contention is that the trial court erred in denying his motion for a directed verdict because there was no evidence of actionable fraud.

For a plaintiff to prevail in a fraud action, he must prove five essential elements: " '(1) That the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.' *Martin Burks Chevrolet v. McMichen*, 136 Ga. App. 845, 847 (222 SE2d 633) (1975)." *Eckerd's Columbia v. Moore*, 155 Ga. App. 4, 5 (270 SE2d 249) (1980).

"[F]raud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. [Cit.] It is true that fraud cannot be generally based on misrepresentation as to future events, except when the misrepresentation is made the defendant knows the future event will not take place. [Cits.] However, fraud may be consummated by signs or tricks, acts, silence or concealment when there is a duty to disclose, or by any other unfair way used to cheat another. [Cits.]" *Marshall v. York*, 165 Ga. App. 795 (302 SE2d 711) (1983).

The evidence showed that the defendant admitted that he prepared a written statement which estimated that more than $30,000 worth of repairs to the property was necessary to avoid condemnation

and that he showed it to the plaintiff's parents, the Wildesons. This estimate was a representation as to the quality of the house and was relied upon by them and Mrs. Propst in making the decision to sell the house to the defendant. They also relied upon his representation that the assessed value of the property in the tax records represented the fair market value of the house. An expert witness for the plaintiff testified that the fair market value of the house in its condition in 1981 was $30,000.

The defendant also violated his duty to disclose that if owner-occupied property is condemned, the owner is not required to move, but would be given any necessary time to get the needed repairs made; and to further disclose the availability of any financial assistance available to the owner of such property. See OCGA § 45-10-1, Code of Ethics for Government Service. Section VIII provides that a person in government service will "[n]ever use any information coming to him confidentially in the performance of governmental duties as a means for making private profit." DeKalb County Ordinance § 9-5013 (c) requires an inspection by disinterested employees. Both of these laws imply a bar to purchasing property for personal gain. In short, there was evidence to show that the defendant used his position as a housing inspector to purchase the plaintiff's house at a price well below its fair market value and thereby defraud the plaintiff.

It was clearly a jury issue as to whether fraud and deceit were intended when Pope informed the plaintiff and her parents that he would condemn her property if certain repairs were not made, in estimating the value of the repairs, and in failing to disclose the options available to the plaintiff. The evidence showed that in his position as a housing inspector, Pope had the authority to cite people for county ordinance violations and initiate condemnation proceedings, and that he displayed a condemnation sign to Mr. and Mrs. Wildeson. A jury could find that Pope used his position to gain the confidence of Mrs. Propst and her aged parents, that he knew of her diminished mental capacity, and that he took advantage of this situation for his own benefit. He drew up the sales contract and did not make any payments until the first lawsuit was filed some four and one-half months later. He admitted that a note was not signed in conjunction with the closing and there was evidence that he prepared a security deed sometime after closing which was never executed and which contained terms not in the sales contract. From this evidence a jury could infer that he never intended to make any payments on the property.

The evidence also showed that appellant made frequent visits to the Wildesons' home where he would have lunch and/or dinner and that he returned only to urge the sale of the house and thereby took advantage of his position as a housing inspector, a position of trust and authority, to win the confidence of Mrs. Propst and her parents.

Mrs. Propst's physician testified that she was mentally incompetent at the time of the transaction although she was not actually declared incompetent until April of 1984, when her mother was appointed her guardian. As stated previously, both her parents were advanced in years and unsophisticated in business matters. Her mother stated that she could only read a little. The defendant had a background in real estate matters, had operated his own home renovation business for several years and was very familiar with the preparation and wording of real estate documents. In preparing these documents, however, he did not state a beginning date for the monthly payments and stated no rate of interest. The contract merely stated that the purchase price was to be paid at $225 per month for 120 months. This amount calculates to a total price of $27,000. Plaintiff's expert witness testified that the interest rate on this amount was 5.01% at a time when comparable rates were 16-18%. Accordingly, there was some evidence from which the jury could find that a confidential relationship existed between the parties and that Jeff Pope used this relationship to perpetrate a fraud upon the plaintiff.

2. Evidence of another similar transaction was properly admitted into evidence. In 1974, an 85-year-old widow sold her home to the defendant. He prepared all the closing documents and the elderly feeble-minded seller retained possession after he took title. She never received any payments or consideration until after suit was filed. That case was not settled and dismissed until after the instant case was filed.

" '(a) Similar acts are admissible in evidence, if committed or proposed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to matters charged against him in the petition. [Cits.] This is so in transactions of similar nature or like character in which the defendant had engaged previously to the one in question. [Cit.] (b) Intent, good faith, motive, and other such matters relating to the state of a person's mind are usually not easily susceptible of direct proof. But frequently the state of mind accompanying the doing of an act is illustrated by other acts of a similar nature, done or proposed by the defendant in such a way as to indicate a general practice or course of conduct, or as to display motive, knowledge, intent, good faith, bad faith, and a variety of other such things. [Cits.] Other transactions showing fraud are admissible to show intent.' [Cits.]" *Tapley v. Youmans,* 95 Ga. App. 161, 175 (97 SE2d 365) (1957).

3. The trial court properly admitted evidence of comparable sales tendered by an expert witness for the plaintiff. The expert testified that his appraisal was done approximately one year after the transaction in question and that he was accustomed to giving an ap-

praisal for a prior period of time because he frequently had to do it for fire insurance purposes and valuation of estates.

The value of real property may be shown by sales of similar property located near the property in question at or near the same time. *Rowe v. City Council of Augusta*, 119 Ga. App. 571 (168 SE2d 209) (1969). The expert witness fully described the methods he used in making his determination of value. We find no error.

4. For the first time on appeal, appellant argues that the plaintiff failed to do equity by offering or tendering the value of the improvements to the subject property and therefore the trial court erred in failing to grant his motion for a directed verdict. Issues not raised in the court below may not be raised for the first time on appeal. *Wood v. Jones*, 175 Ga. App. 534 (334 SE2d 9) (1985); *Pettus v. Smith*, 174 Ga. App. 587 (330 SE2d 735) (1985). "The point appears here in its virgin state, wearing all its maiden blushes, and is therefore out of place." *Cleveland v. Chambliss*, 64 Ga. 353, 359 (1879).

5. Appellant contends that the court below erred in denying his motion for a judgment notwithstanding the verdict and for a new trial because punitive damages and attorney fees were improperly awarded by the jury. Neither of these motions mention the award of punitive damages or attorney fees. As stated in Division 4 above, issues not raised in the court below cannot be raised for the first time on appeal.

Appellant, however, did object to a jury charge on these issues and it is argued in his eighth enumeration of error. Punitive damages may be awarded under OCGA § 51-12-5. It is a jury question as to whether circumstances are sufficiently aggravating to authorize the award of punitive damages. *Georgia-Car. Brick &c. Co. v. Brown*, 153 Ga. App. 747 (266 SE2d 531) (1980). Attorney fees may be recovered under OCGA § 13-6-11 for bad faith. See *Georgia-Car. Brick &c. Co. v. Brown*, supra; cf. *Jones v. Spindel*, 239 Ga. 68 (235 SE2d 486) (1977). The charges were authorized by the evidence.

6. There was sufficient evidence to authorize the trial court to give plaintiff's request to charge number 6: "Where one person is placed in such a relationship to another that he becomes interested for him or with him in any subject or property, he is prohibited from acquiring rights in that subject or property with that person."

The evidence showed the defendant's position as a housing inspector, that he used his position to influence appellee and her parents into selling her house by threatening to condemn it, that he deliberately used his position to encourage their trust in him, and that his use of his position ultimately resulted in the sale of the house. OCGA § 23-2-58 defines a confidential relationship as: "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and

interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." After hearing the evidence, the jury could find that a confidential relationship existed.

7. As no objection was raised in the court below to the trial court's instruction on wilful misrepresentation, this issue cannot be raised for the first time on appeal. See Division 4 above.

8. Appellant urges as error the trial court's failure to give the following request to charge: "I charge you that matters relating to condemnation of property are matters of law and that a misrepresentation as to a matter of law is a statement of opinion only and cannot afford a basis for a charge of fraud or deceit in the making of a contract." Appellant claims it was error for the trial court to charge only that "the statement of an opinion cannot constitute the basis for a fraud claim" and should have given his requested charge instead.

The evidence showed that the defendant did not condemn the property; he threatened to condemn it if certain repairs were not made. An examination of the charge as a whole shows that the jury was charged that the defendant was a public officer because he was a county housing inspector, that the powers of public officers are defined by law and that all persons must take notice thereof. The defendant's threats of condemnation were threats of what he personally intended to do. The trial court charged that misrepresentations are not actionable unless there is justifiable reliance upon them in the exercise of common prudence and diligence "and where the representation consists of general commendations or mere expressions of opinion, the party to whom it is made is not justified in relying upon it and assuming it to be true. She is bound to make an inquiry and examination for herself so as to ascertain the truth." We find the court did not err in failing to give the requested charge. The charge taken as a whole was a complete and correct statement of the law.

9. The trial court did not err in admitting plaintiff's exhibits 11 and 12, which were letters from Jeff Pope on DeKalb County stationery to the DeKalb County Sanitation Department concerning several properties which were allegedly condemned or uninhabitable and were dated one year after the sale of the Propst house to Pope. The first letter is dated October 13, 1982, and referred to the property in question. It verifies inspection and states that review has been made for possible condemnation, that extensive repairs are needed, and the owners of the listed properties may find it feasible to repair. Pope does not reveal that he is the owner of one of the listed properties. The second letter is dated November 2, 1982, and requests removal of certain listed properties from sanitary billings as records show them to be "uninhabitable, condemned or unfit for human habitation" and

states that the houses have been vacant for some time. Again, Pope does not reveal that he is the owner of one of the listed properties, the Propst house.

The letters were tendered to show the defendant's continuing fraudulent state of mind, motive and intent. *Ballard v. Turner*, 147 Ga. App. 584 (249 SE2d 637) (1978). A jury could find that he intended to reap a profit from the property in question and that these letters were a part of his overall fraud scheme. Relevancy of evidence is a matter for a trial court's discretion. If relevancy is doubtful, it should be admitted and its weight left to the jury's determination. *Reed v. Heffernan*, 171 Ga. App. 83 (318 SE2d 700) (1984).

10. The appellant does not show how the admission into evidence of plaintiff's exhibits 15, 16 and 17 harmed him. They were photographs of the plaintiff taken approximately 15 to 20 years ago when she was a professional singer. They were admitted for the purpose of allowing the jury to evaluate the extent of plaintiff's mental impairment to the extent it was reflected in her personal appearance. There was also testimony of the difference between her appearance on the date of sale and the date of trial. Appellant claims that the verdict was based on prejudice in favor of the plaintiff and that the photographs contributed to this prejudice. Considering the overwhelming evidence of fraud against the defendant, it is unlikely that the admission of these photographs, assuming *arguendo* it was error to admit them, contributed to the jury verdict. Appellant must show harm as well as error to prevail. *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380 (277 SE2d 753) (1981).

*Judgment affirmed. Benham and Beasley, JJ., concur.*

DECIDED MAY 13, 1986 —
REHEARING DENIED MAY 27, 1986 — 

*V. C. Baker*, for appellant.
*Joseph Girardot, Glen Galbaugh*, for appellee.