71605, 71606. GEORGIA POWER COMPANY v. HINSON;
and vice versa.
(346 SE2d 73)

SOGNIER, Judge.

J. T. Hinson, d/b/a Edgy Wooten Lumber Company, brought suit against Georgia Power Company seeking compensatory damages as a result of a fire on the premises of the lumber company allegedly caused by Georgia Power's negligent maintenance of electrical wires servicing Hinson's business. Hinson also sought actual and punitive damages based on the allegation that Georgia Power deliberately and intentionally tampered with evidence critical to Hinson's suit. The jury returned a verdict in favor of Hinson for compensatory damages to his business but did not award any sums for punitive damages nor attorney fees and other costs of litigation. Georgia Power appeals in Case No. 71605. Hinson's cross-appeal in Case No. 71606 is specifically contingent on our holding in the main appeal.

On the night of November 9, 1979, a fire broke out at appellee's lumber business which burned several buildings containing inventory and machinery. Appellant supplied a line of electricity to appellee's business along a series of overhead wires attached to poles. A single transformer pole, which served as the penultimate point in the line, was connected with a triple transformer pole by four wires: three primary or "hot phase" wires carrying a stepped down 7200 volts and one neutral or ground wire. The guy wires which braced the single transformer pole were connected directly behind the neutral wire, which was the lowest of the four wires extending between the single and triple transformer poles. At the triple transformer pole, the 7200

volts carried by the hot phase wires were again stepped down to provide the amperage required by appellee's business and then carried, by three customer poles (i.e., poles supplied by appellee), to the various buildings at the lumber company. The main panel box for appellee's business was located in the planer shed and accommodated three phase wires with 240 volt service plus the neutral wire which was grounded via an aluminum ground lug, wire and an 8-foot ground rod.

1. Appellant contends the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict based on the insufficiency of the evidence. First, appellant asserts that the evidence establishing appellant's negligence was insufficient because the testimony of appellee's expert witness, Robert English, was based on assumptions and inferences, and thus was wholly without probative value. We find no merit in this assertion. English testified as to his qualifications then stated he had examined the fire scene 9 or 10 days after the subject incident. He determined that current of an amperage far exceeding the capabilities of appellee's electrical system had passed through the main panel box in the planer shed in the course of going to ground and that the fire started as a consequence of this "fault" current. Based upon his examination of the main panel box, the wiring still on the scene and the wiring appellant had had to replace because of its destruction in the fire, English concluded that the fault current was produced when the neutral wire, strung between the triple transformer pole and a customer pole, had snapped, whiplashed upward into the hot phase wire, and become energized with the current in the live wire. The fault current in the energized neutral wire had then flowed down the wire back towards appellee's main panel box, destroying the neutral· wire in the process, setting insulation on fire and blasting off the padlocked cover of the panel box before it went to ground. To determine why the neutral wire had snapped, English examined the single transformer pole, found the guy wires still attached to it and stated he saw recent indications that the guys had been tightened. There was evidence from both parties that appellant's employees tightened these guy wires four days prior to the fire. English stated he observed that the single transformer pole was "sort of bowed like this where a guy had been pulled tight," and stated that because the guy wires were connected directly behind the neutral wire, tightening the guy wires would place tension on the neutral wire. English testified that because wire contracts at night when the temperature drops, a certain degree of sag must be left in the neutral wire to avoid undue tension. English also noted that the neutral wire used by appellant at appellee's facility was pure aluminum, rather than reinforced steel core aluminum which has greater tensile strength. Based on his knowledge and experience, English concluded that the night of the fire, the pure aluminum neutral wire did not

have the strength to resist the combination of guy wire tension and natural contraction, so it snapped.

"Issues of negligence and proximate cause are generally for the jury, and a court should not decide them except in plain and indisputable cases. [Cits.]" *Collins v. McGlamory*, 152 Ga. App. 114 (262 SE2d 262) (1979). See also *Groover v. Dickey*, 173 Ga. App. 73, 74 (2) (325 SE2d 617) (1984). Thus, the trial court properly submitted to the jury the issue whether the tightening of the guy wires by appellant's employees was negligently performed and, if overtightened, whether this was the proximate cause of the fire. Appellant's argument that the conclusion drawn by appellee's expert that the guy wires had been overtightened was speculative and conjecture is without merit. "There is no debate that [English] is an expert knowledgeable in the investigation and analysis of fires, in particular, electrical fires. He fully described his investigation and analysis of the fire, basing his conclusions and opinions on principles of electrical engineering and facts he observed and interpreted in the debris of the fire. It was reasonable that he draw conclusions as to the cause of the fire, and he was qualified to do so. [Cits.] As was emphasized in his testimony above, a fire naturally tends to burn out its own tracks and thus there will generally be some speculation by an expert testifying as to the anatomy and cause of a fire; but where his opinion testimony is based on observed facts the testimony is competent evidence, and its weight, insofar as how speculative it may be, is to be determined by the jury. [Cit.]" *Johnson v. Fowler Elec. Co.*, 157 Ga. App. 319, 322 (2) (277 SE2d 312) (1981).

Second, appellant asserts that the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict because the evidence establishing the fair market value of appellee's damaged property, consisting solely of appellee's testimony as to replacement costs, was insufficient. The evidence shows that several buildings, some containing machinery and others containing inventory, were totally destroyed by the fire. Appellee's manager gave detailed testimony as to the extent of the inventory and its value prior to the fire. Appellee testified that he personally had drawn plans and constructed a house, tobacco barn, lot barns and remodeled a house. He testified that he was familiar with the price of motors and equipment, repair costs, replacement costs for parts used in his company's special equipment, and was familiar with the condition of his machinery and buildings prior to the fire. Appellant then testified as to the fair market value of buildings and machinery before the fire.

The measure of damages here is the difference between the market value of the items before the fire and their fair market value after the fire, *Hill v. Kirk*, 78 Ga. App. 310, 311 (50 SE2d 785) (1948), and it is uncontroverted that the items for which compensatory damages

were sought were totally destroyed by the fire. Although appellant enumerates as separate error the admission of testimony by appellee as to the fair market value of the damaged property on the basis that it was testimony of replacement value, we find no error by the trial court in admitting appellee's opinion testimony as to the fair market value of the damaged property before the fire. The record reveals that appellee had adequate opportunity to form a correct opinion as to the value of the items lost, OCGA § 24-9-66, and that the values to which he testified were those prior to the fire. Thus, there was no error in the admission of his testimony, see generally *Shadowood Assoc. v. Kirk*, 170 Ga. App. 209, 211 (3) (316 SE2d 487) (1984), and, because of this evidence, it was not error to deny appellant's motions for directed verdict and judgment notwithstanding the verdict. See generally *White Repair &c. Co. v. Daniel*, 171 Ga. App. 501 (1), 503 (2) (320 SE2d 205) (1984).

2. We find no error in the trial court's denial of appellant's motion for directed verdict on the issue of lost profits in view of the jury verdict in favor of appellant on this issue. See *Thornton v. Davis*, 162 Ga. App. 692, 693 (5) (293 SE2d 1) (1982).

Appellant argues that the trial court erred by denying its motions to strike and for directed verdict, both made on appellee's claim for punitive damages for appellant's alleged spoliation of evidence. Appellant asserts that the admission of evidence concerning this issue prejudiced the case and inflamed the jury, thereby affecting the verdict rendered. We note that while the issue of the altered evidence was hotly controverted, there was some slight evidence to support appellee's claim; further, this evidence would have been admissible at trial even had appellee's claim for punitive damages been struck because of the evidentiary presumption spoliation raises against the spoliator. See *Glynn Plymouth, Inc. v. Davis*, 120 Ga. App. 475, 482 (1) (170 SE2d 848) (1969); affd. on other grounds, 226 Ga. 221 (173 SE2d 691) (1970); *Bennett v. Assoc. Food Stores*, 118 Ga. App. 711, 716 (2) (165 SE2d 581) (1968); *Greer v. Andrew*, 138 Ga. 663 (3) (75 SE 1050) (1912). Regardless, the jury returned a verdict in favor of appellant on appellee's claim for punitive damages, finding specially that appellant had not attempted to defraud appellee and mislead the court and the jury by altering evidence. This verdict rendered harmless any error by the trial court, see *Thornton*, supra, and thus appellant's numerous arguments concerning this issue, such as the admission of testimony regarding various fees sought by appellee contingent on the punitive damages claim, admission of interrogatories and documentary evidence regarding the allegedly altered evidence, charges regarding punitive damages and attorney-client relationships, and the denial of appellant's motions to strike the claim, for directed verdict and for judgment notwithstanding the verdict, present no reversible

error. See generally *MARTA v. Tuck*, 163 Ga. App. 132, 138 (4) (292 SE2d 878) (1982). Although appellant argues that the trial court's failure to grant its motions for directed verdict on the issues of lost profits and punitive damages was error under *Davis v. Pachuilo*, 169 Ga. App. 677 (1) (314 SE2d 692) (1984), we do not agree with appellant that the instructions given by the trial court confused the jury and contributed to the amount of damages awarded where the special verdict clearly set forth the amount of damages found by the jury as to the items of property destroyed by the fire, and where the record presents more than sufficient evidence to support the amounts of compensatory damages awarded.

3. Appellant contends the trial court erred by admitting into evidence an interrogatory proposed by appellee in which appellant stated that when its employees responded to a service call at appellee's business four days before the subject fire, they found the problem not to be appellant's wire but a customer's wire. This answer was in conflict with testimony by appellant's employees and was admitted as a contradictory statement under OCGA § 24-9-83. Appellant's argument that admission of this evidence "unduly emphasized" its answer, per our opinion in *Goins v. Glisson*, 163 Ga. App. 290, 292-293 (2) (292 SE2d 917) (1982), is not well taken. In *Goins*, we found reversible error in the admission of certain pleadings, interrogatories and answers of another civil case in which that appellant had been the plaintiff 10 years earlier where only some of the material *may* have been relevant at trial. Here, evidence of the action taken by appellant's employees in tightening the guy wires at the single transformer pole during the visit four days before the fire was pivotal to appellee's case. In the deposition of appellant's employee which was read at trial, the employee stated that appellant did not effect repairs when the cause of the fault did not lie in appellant's equipment. Thus, appellant's answer to the interrogatory disclaiming responsibility for the earlier incident and thereby casting doubt whether appellant's employees had taken any repair action during this visit was relevant at trial for purposes of impeachment and *Goins*, supra, is thus distinguishable.

4. Appellant enumerates two errors concerning the jury deliberations. The record reveals that the jury retired for deliberation after listening to two and one-half weeks of proceedings, involving over two dozen witnesses and roughly 200 exhibits. After deliberating less than three hours, the jury was excused for the day and, upon its return the following morning, was recharged the complete initial charge. The jury resumed deliberations but upon claiming to be deadlocked, they were then given the "dynamite" charge, see generally *Curry v. State*, 175 Ga. App. 758 (3) (334 SE2d 356) (1985), before recessing for lunch. The foreperson informed the trial court that the jury was still

"at the fussing stage." Subsequently, the trial court was informed that the jury was deadlocked. However, after recessing that afternoon and upon the trial court's clarification of a few matters of law the following morning, the jury returned its verdict before noon on its third day of deliberations. During the polling of the jury, although one juror stated his verdict was given "on a compromise," the juror agreed it was his verdict and no juror responded when the trial court, as a final precaution, asked the entire jury whether there was anyone whose verdict was not freely and voluntarily given. The record fails to support both appellant's contention that a mistrial was necessary because the jury's deliberations had degenerated to a point where a legal, fair and impartial verdict could not be reached and appellant's contention that further deliberations were necessary because one juror's verdict was not freely and voluntarily given.

5. Appellant enumerates errors regarding the trial court's admission of testimony by appellee's witnesses, Robert Woods and Robert English, and the trial court's refusal to admit testimony by appellant's witness, Roy Gottschalk, and testimony by appellee on cross-examination.

(a) As to Robert Woods, any error in admitting his testimony as to the slant of the single transformer pole shortly before trial is harmless in view of testimony by English that the single transformer pole was bowed nine days after the fire and rebuttal testimony by appellant's expert witness contending that the slant of the single transformer pole, as observed after the fire up to the time of trial, was not the result of any guy wire overtightening. See generally *Smith's Transfer Corp. v. Alterman Foods*, 162 Ga. App. 284, 286 (2) (291 SE2d 261) (1982).

We find no error in the admission of testimony by Robert English that appellant's circuit breakers would have locked out the current had it been one of the hot phase wires which had broken rather than the neutral wire as contended by appellee. The fact that appellant's circuit breakers would have been activated had there been a fault on the hot phase wires had already been established in the record and English's response to appellee's question merely reiterated that fact. The record shows that the question and answer were not proposing the hot phase wire *had* broken; rather, the testimony was eliminating one of the alternatives English had considered as a possible cause of the fire and explaining why that alternative was not feasible under the facts in this case.

We find no merit in appellant's final enumeration of error concerning English's testimony. Contrary to appellant's assertion, the record reveals the testimony was not offered as evidence of other happenings and transactions but instead was a reference by English to his personal experience which justified his qualification as an expert

witness.

(b) The record reveals that the testimony appellant sought to elicit from its expert, Roy Gottschalk, on direct examination was subsequently obtained by appellant on redirect examination. Thus, this enumeration presents no error. See *Smith's Transfer Corp.*, supra.

The trial court did not err by refusing to admit testimony on cross-examination of appellee as to the subsequent sale of appellee's business. The proffered testimony shows that the sale occurred five years after the fire, that the inventory was less than half of what it was on the day of the fire, that the replacement buildings were structurally different from the old buildings, and that equipment was not included in the sales price. The trial court did not abuse its discretion in refusing to admit this testimony. See *Allstate Ins. Co. v. McGee*, 157 Ga. App. 53, 55 (7) (276 SE2d 108) (1981); *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 163 (4) (256 SE2d 916) (1979).

6. (a) Of the three enumerations contending error in charges given by the trial court, two have been decided adversely to appellant in Division 2, see *Lewyn v. Morris*, 135 Ga. App. 289, 291 (3) (217 SE2d 642) (1975), and the third enumeration, asserting the trial court erred by charging the voluminous and repetitious contentions of appellee, is not supported by our examination of the trial court's charge. See generally *Whitmire v. Woodbury*, 154 Ga. App. 159, 160 (3) (267 SE2d 783) (1980).

(b) Appellant enumerates seven errors from the failure of the trial court to charge certain requests to charge. Requests numbers 4, 9, 10, 11 and 15, which address appellee's burden of proving that the cause of the fire was neither a mystery nor speculation but was proximately caused by appellant's negligence as shown by a preponderance of the evidence, were all charged in essence by the trial court and thus present no reversible error. See *Allstate Ins. Co. v. Baugh*, 173 Ga. App. 615, 618 (5) (327 SE2d 576) (1985). The trial court's instruction to the jury that an electric company is not responsible for the defective condition of the electrical wires or other apparatus owned and controlled by the occupant or owner of a building adequately covered the contents of appellant's request to charge number 18. Id. Finally, we have examined those parts of the record which appellant contends support its request to charge number 12 and find conflicting evidence existed on the issues raised therein. The charge, therefore, was not precise and apt as to the evidence and the trial court did not err by refusing to charge it. See *Barlow v. Veber*, 169 Ga. App. 65, 67 (2) (311 SE2d 501) (1983).

7. Appellant contends the trial court erred by denying its motions for mistrial made at the close of appellee's opening statement, at appellee's closing argument, and during trial because of statements exchanged by counsel for both parties during the examination of a wit-

ness. " 'The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. [Cits.] Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with.' [Cit.]" *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840, 843 (2) (244 SE2d 905) (1978). We have examined the statements made which appellee asserts should have been grounds for the grant of his motions for mistrial. We note in regard to the only meritorious argument that evidence of appellee's lack of insurance was admitted during trial without objection by appellant and, therefore, any error by appellee's counsel in referencing the matter during opening statements was harmless. See *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 881 (3) (311 SE2d 193) (1983). We find no abuse of the trial court's discretion in denying appellant's motions for mistrial as to any of the remaining statements.

8. Appellant's final enumeration of error is without merit.

9. The affirmance of Case No. 71605 renders it unnecessary for us to address the cross-appeal in Case No. 71606 and it is, accordingly, dismissed.

*Judgment affirmed in Case No. 71605. Appeal dismissed in Case No. 71606. Banke, C. J., and Birdsong, P. J., concur.*

DECIDED MAY 22, 1986 —
REHEARING DENIED JUNE 3, 1986 — 

*J. Thomas Whelchel, James V. Towson, John E. Bumgartner, Wallace Miller, Jr.*, for Georgia Power Co.
*J. S. Hutto, Karen M. Krider*, for Hinson.