A96A0935, A96A0936. FOUTS et al. v. BUILDERS TRANSPORT, INC. et al.; and vice versa.
(474 SE2d 746)

RUFFIN, Judge.

These cross-appeals stem from a June 15, 1990 automobile collision involving a mini-van driven by Gracie Fouts and a tractor-trailer truck owned by Builders Transport, Inc. ("Builders") and driven by Earnest W. Brinser. Gracie Fouts sued for medical expenses, lost wages, loss of ability to work, and past and future physical and mental pain and suffering, and her husband, Bartow Fouts, sued for loss of consortium. The jury returned a $37,779 verdict in favor of Gracie Fouts for her personal injuries, but returned a verdict in favor of Builders and Brinser for Bartow Fouts' loss of consortium claim. Subsequently, the trial court amended the judgment to reduce the verdict by $5,000, which was the amount of no-fault benefits paid to Gracie Fouts by her insurance carrier. In Case No. A96A0935, the Fouts appeal evidentiary rulings, jury charges and the no-fault setoff. In Case No. A96A0936, Builders and Brinser cross-appeal, citing errors in the admission of evidence, jury charges, and denial of their motions for directed verdict. For reasons which follow, we reverse Case No. A96A0935 and affirm Case No. A96A0936.

The collision occurred at the intersection of Dietz Road and State Route 2. Gracie Fouts was stopped at a red traffic signal in the southbound lane of Dietz Road. Brinser, driving westbound on State Route 2, approached the Dietz Road intersection as the traffic light changed from green to yellow. Brinser applied his brakes, but failed to stop prior to reaching the intersection. There was no dispute that at the time of the collision the traffic signal was red for Brinser and green for Gracie Fouts. Another vehicle in the lane to the left of Gracie Fouts was also stopped for the traffic signal. According to an eyewitness, the vehicle to the left of Gracie Fouts began to pull into the intersection when the light turned green for Dietz Road. After pull-

ing out two or three feet, this vehicle then stopped, apparently having seen the tractor-trailer coming into the intersection. After the vehicle to the left of Gracie Fouts stopped, however, Gracie Fouts began to move into the intersection, and she collided with Brinser's tractor-trailer. Gracie Fouts testified that she saw the vehicle to her left begin to pull into the intersection, at which point she began to move into the intersection. She further testified she was not aware of other accidents at the intersection and that she could not recall looking up State Route 2, in the direction Brinser was traveling, prior to entering the intersection.

*Case No. A96A0935*

1. The Fouts correctly assert that the trial court's jury instruction on the last clear chance doctrine warrants a new trial. The trial court charged the jury as follows: "I charge you that a person is under an obligation to use ordinary care to avoid injuring another after finding him in a dangerous place regardless of how he gets there or she gets there and is liable for his failure or her failure to do so. This is known as the last clear chance rule." For reasons which follow, we find that this charge, while properly given in relation to Brinser's actions, did not apply to the Fouts based on the evidence in the record, and therefore, the language charged was harmful and may have misled the jury.

Contrary to Builders and Brinser's argument, the last clear chance rule is not strictly related to liability, but is also related to damages when applied within the context of the doctrine of comparative negligence. See *Seaboard Coast Line R. Co. v. Daugherty*, 118 Ga. App. 518, 522 (4) (164 SE2d 269) (1968). In *Daugherty*, a case involving the Federal Employer's Liability Act ("FELA"), this Court held that "the last clear chance rule is obsolete except insofar as it defines one variety of negligence and is merged into the rule for apportioning damages. [Cit.] 'The doctrine of contributory negligence and the rule of last clear chance are involved in, and vanish as such into, the principle of comparative negligence and apportionment of damages.' [Cit.]" Id. Although the holding in *Daugherty* applied only to cases under the FELA, which adopts the comparative negligence standard, we believe that this reasoning is equally applicable to cases under Georgia's comparative negligence statute, OCGA § 51-11-7, and that the last clear chance rule necessarily affects damages when coupled with this statute. Thus, the jury verdict in favor of Gracie Fouts does not preclude the Fouts from arguing this issue.

The last clear chance rule contains two essential elements: (1) party number one, by his own negligence, "must have put himself in a position of peril from which he could not extricate himself (but the

[second party] presumably could have extricated him)" and (2) party number two "must have knowledge and appreciation of the injured person's peril in time to avoid the injury." (Citations and punctuation omitted.) *Stallings v. Cuttino*, 205 Ga. App. 581, 583 (422 SE2d 921) (1992). The last clear chance doctrine "cuts both ways and can be applied to prevent any recovery by a plaintiff who could have extricated [herself] from peril and failed to do so." *Daugherty*, supra at 522.

While the Fouts contend Brinser could not have avoided the collision due to brake failure, the jury was authorized to conclude, based on the evidence at trial, that Brinser's brakes were working at the time of the collision and that Brinser could have stopped his tractor-trailer in time to avoid entering the intersection and colliding with Gracie Fouts' van.[1] There was no dispute that Brinser was at least 75 feet from the intersection when the light changed from green to yellow. According to the investigating officer, Brinser's tractor-trailer left skid marks on both the right and left side measuring 150 feet prior to impact and 60 feet after impact. These skid marks indicated that the vehicle's brakes were working to some degree. Brinser testified he previously had no problem with the brakes, and his brakes were working when he started down the hill toward the intersection. In addition, an eyewitness testified she saw the truck's brake lights come on when the light turned yellow. This eyewitness further testified that, based on her experience and knowledge of the intersection, Brinser could have stopped the truck prior to entering the intersection if his brakes were working properly. This testimony was reinforced by the testimony of Brinser and the DOT signal engineer regarding the distance Brinser's vehicle traveled, the speed of his vehicle, and the timing of the lights.

"It is well established that an instruction is not abstract nor inapplicable where there is some evidence, however slight, on which to predicate it. [Cit.] To justify a charge on a given subject, it is not necessary there should be overwhelming evidence going to that point, it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it. [Cit.]" *Sapp v. Johnson*, 184 Ga. App. 603, 605 (2) (362 SE2d 82) (1987). Based on

---

[1] While Brinser and Builders contended in the pretrial order that the collision was caused by brake failure, evidence to the contrary was introduced by both parties, without objection. "[A]n issue that is clearly outside the scope of a pre-trial order is generally not a viable issue in the trial of the case." (Citations and punctuation omitted.) *Tahamtan v. Tahamtan*, 204 Ga. App. 680, 681 (1) (420 SE2d 363) (1992). However, since evidence was introduced without objection on Brinser's ability to stop, the Fouts expressed no surprise, and the issue was fully litigated. The fact that the pretrial order expressed the opposite contention is not controlling. Id. See also *Carreras v. Austell Box Board Corp.*, 154 Ga. App. 135, 136 (2) (267 SE2d 792) (1980).

the above evidence, we find that a jury was authorized to conclude that Gracie Fouts placed herself in a perilous position and Brinser knew and appreciated her peril in time to avoid the injury. Thus, while we are not sure why Brinser and Builders would request such a charge which, if properly given, would benefit the Fouts, a charge on last clear chance with respect to the liability of Brinser and Builders was warranted by the evidence. See *Hurst v. J. P. Colley Contractors*, 167 Ga. App. 56 (1) (306 SE2d 54) (1983).

However, the evidence in the present case is undisputed that Gracie Fouts did not see or hear Brinser's tractor-trailer prior to the collision. Thus, she did not have knowledge and appreciation of Brinser's peril in time to avoid the injury. The last clear chance doctrine "does not apply to a 'should know' or 'should have known' situation." (Citations and punctuation omitted.) *Stallings*, supra at 583. Accordingly, the trial court incorrectly determined that last clear chance was applicable to both parties, and "the instruction as given may have misled the jury into believing that the doctrine could be applied, not to hold [Brinser and Builders] liable even if the [Fouts] were negligent, but to find that [Gracie Fouts'] alleged negligence proximately caused the accident. . . . [T]he jurors could have construed the last clear chance instruction as meaning that if [Gracie Fouts] had the last clear chance to remove [her vehicle from the intersection], and failed to do so, then that failure, rather than any possible negligence by [Brinser], proximately caused [the Fouts'] injuries. That is an incorrect application of the last clear chance doctrine." *Townsend v. Wright*, 220 Ga. App. 324, 326 (1) (469 SE2d 281) (1996).

Because the instruction as given may have misled the jury and we do not know what effect the charge had upon the application of comparative negligence, the court's error in giving the instruction in the language charged was harmful, and a new trial is required. Id. See also *Richardson v. Coker*, 78 Ga. App. 209, 213 (1) (50 SE2d 781) (1948).

Since the Fouts' remaining enumerations of error may recur upon retrial, we will also address the remaining enumerations.

2. The Fouts correctly assert the trial court erred in giving a charge regarding the lack of an absolute duty to have one's vehicle under control in order to avoid a collision. The charge as given stated, "the law of this state does not impose upon the driver of a motor vehicle the absolute duty of having his vehicle under such control that he can bring it to a stop in order to avoid an injury to any person or property which may be in the path of such motor vehicle." Contrary to Builders and Brinser's argument, the Fouts can properly challenge this charge, notwithstanding the jury verdict in their favor, since the charge is not strictly related to liability, but is also related to dam-

ages in a case applying the doctrine of comparative negligence. See id. at 213.

Builders and Brinser cite no cases, and we can locate none, where this statement of the law has been applied to a factual pattern similar to that in the present case. Historically, the notion that an individual does not possess an absolute duty to have his vehicle under such control to enable him to stop in time to avoid a collision has been applied in cases where there is no negligence per se. See, e.g., *Meeks v. Cason*, 208 Ga. App. 658, 659 (1) (431 SE2d 407) (1993) (vehicle slid on rain-slicked road when brakes were applied); *Simpson v. Reed*, 186 Ga. App. 297, 298 (2) (367 SE2d 563) (1988) (car struck riding lawn mower as it crossed rural highway); *Slaton Machine Sales v. Owens-Illinois, Inc.*, 138 Ga. App. 80, 82 (4) (225 SE2d 473) (1976) (tractor-trailer struck another truck in the rear); *Attaway v. Morris*, 110 Ga. App. 873, 874 (5) (140 SE2d 214) (1965) (collision due to lane change).

In the present case, it is undisputed that Brinser's tractor-trailer ran the red light. Thus, Brinser violated OCGA § 40-6-20, which mandates an absolute duty to stop a vehicle for a traffic control device. Whether Brinser's vehicle experienced brake failure, as contended by the Fouts, or whether Brinser's brakes were working and complied with the regulatory requirements regarding braking distances, as we discussed in Division 1, is irrelevant. "We think that under the facts of the case this charge was error. It had the effect of relieving [Brinser] of the positive duty of stopping his [truck at the red light]. . . . The rule stated in the charge applies to intersecting highways and streets where right-of-way rules apply. [Cits.]; but it does not apply where there is a requirement to stop. . . ." *Richardson*, supra at 213.

As in Division 1, "[w]e cannot say that the charge was harmless merely because the jury probably found both parties negligent and applied the comparative-negligence doctrine. We do not know what effect the charge had upon their application of the doctrine, if they applied it." Id. Thus, this issue also warrants a new trial.

3. On June 8, 1990, seven days prior to the collision at issue in this case, a traffic signal was installed at the intersection of Dietz Road and State Route 2. In two enumerations of error, the Fouts contend the trial court erred in admitting evidence of forty accidents which occurred at this intersection prior to June 8, 1990, and eight accidents which occurred at this intersection after June 8, 1990. According to the Fouts, these accidents were irrelevant, and the collision diagrams should have been excluded. We agree that evidence of accidents occurring prior to June 8, 1990, should have been excluded, but disagree that evidence of accidents occurring after June 8, 1990, should have been excluded.

Builders and Brinser did not offer the collision diagrams as evidence of similar incidents or proof of negligence, but offered the reports for the purpose of showing the dangerous character of the intersection. The collision diagrams at issue were part of a study and evaluation of the intersection by the Georgia Department of Transportation ("DOT") to determine the need for a signal and the effectiveness of the signal after it was installed.

The trial court permitted evidence of the accidents to show the characterization of the intersection. However, the trial court ruled the witness needed to testify that the character of the intersection changed before the accident in the present case. The trial court concluded: "I don't think that it is in error for the court to admit that. It may cause me to have to give some special instruction to the jury, but I will let the evidence go in and just let the jury decide what they feel is competent and incompetent about it."

While ordinarily evidence of other accidents at the same intersection is not admissible, such evidence may be admissible for the purpose of showing a dangerous condition. *Wright v. Dilbeck,* 122 Ga. App. 214, 216 (4) (176 SE2d 715) (1970). See also *Dept. of Transp. v. Brown,* 218 Ga. App. 178, 183 (4) (460 SE2d 812) (1995). However, this basis for the inclusion of other accidents has been limited to "[e]vidence of other accidents or near accidents at the same intersection at other times *under the same or similar circumstances. . . ."* (Emphasis supplied.) Id. at 183. See also *Wright,* supra at 218 ("for such evidence to be admissible, however, it must appear that the physical conditions at the crossing on the other occasions were substantially similar to those at the time of the collision under investigation"). It is clear that the intersection of Dietz Road and State Route 2 changed dramatically on June 8, 1990, when the traffic signal was installed and it became a controlled intersection. Thus, any accident which occurred prior to June 8, 1990, did not occur under the same or similar circumstances and should have been excluded.

On the other hand, the proffered accidents which occurred after June 8, 1990, did occur under the same or similar conditions, and the trial court did not abuse its discretion in allowing the jury to hear evidence of these accidents at the intersection. "The [Fouts'] attempt to factually distinguish this accident from the others on the basis of the speed or direction of the cars involved is unavailing as there is no requirement that the other accidents be identical. [Cit.]" *Brown,* supra at 183. "Relevancy of evidence is a matter for a trial court's discretion. If relevancy is doubtful, it should be admitted and its weight left to the jury's determination. [Cit.]" *Pope v. Propst,* 179 Ga. App. 211, 217 (9) (345 SE2d 880) (1986).

4. The Fouts claim the trial court erred by improperly charging the jury on comparative negligence. The trial court charged as fol-

lows: *"I charge you, ladies and gentlemen, that therefore if you find the plaintiff negligently failed to exercise care for the plaintiff's own safety, then in that event, ladies and gentlemen, that is the doctrine of comparative negligence.* The comparative negligence doctrine in this state is as follows: If you find that the negligence of the defendants, if any, was less than the negligence of the plaintiff, Gracie Fouts, if any, then in that event the plaintiffs could not recover. . . . If you find the negligence of the defendants, if any, was greater than the negligence of the plaintiff, Gracie Fouts, if any, then in that event the plaintiffs could recover but the amount of recovery would be reduced by the degree of negligence chargeable to the plaintiff, Gracie Fouts. *Where a plaintiff's injury or damages, if any, are the result of their own erroneous judgment or due solely to their own negligence, the doctrine of comparative negligence is not applicable and the plaintiffs are not entitled to recovery."* The Fouts contend the emphasized portion of this charge was erroneous because it "bastardize[d] comparative negligence by inappropriately cross-breeding it with an erroneous charge on duty to exercise care for one's own safety[,] misstating that princip[le] as well."

It is well established that "[t]he entire charge must be considered, not just one sentence. [Cit.]" *Lawhorn v. Gulf Oil Corp.*, 145 Ga. App. 80, 81 (243 SE2d 253) (1978). The portion of the charge to which the Fouts take exception is included within an extensive charge on comparative negligence. The complete charge clearly states that negligence on the part of Gracie Fouts would not prevent recovery by the plaintiffs if her negligence was less than the defendants'. Although it would have been preferable to substitute the word "and" for the word "or" in the last sentence, as suggested by the Fouts, "viewing the charge as a whole, as we must, [cit.], we cannot say that it misstated the law or was confusing to the jury." *Ingram v. Peterson*, 196 Ga. App. 888, 889 (3) (397 SE2d 141) (1990). Accordingly, the trial court did not err in giving this charge.

5. In their last enumeration of error, the Fouts contend the trial court erred in granting a no-fault write-down to Builders and Brinser pursuant to OCGA § 33-34-3 (d). We disagree.

After the verdict and judgment were entered, the trial court amended the judgment by writing the verdict down by $5,000, the amount of no-fault benefits paid to Gracie Fouts by her insurance carrier. The Fouts claim that the write-off was not proper because Gracie Fouts' no-fault carrier and Builders and Brinser's liability insurance carrier were the same, the Insurance Company of North America ("INA"). The Fouts offer no authority in support of their argument, but contend that "as an equitable matter, INA cannot subrogate against INA." We find no support in OCGA § 33-34-3 (d) for the Fouts' argument. If the Fouts' argument is correct, INA would

have paid no-fault benefits to Gracie Fouts and would also be obligated to pay an additional $5,000 on behalf of Builders and Brinser for the verdict and judgment in favor of Gracie Fouts, thus giving Gracie Fouts a double recovery. Accordingly, the trial court did not err in amending the judgment to write off the amount of no-fault benefits paid to Gracie Fouts.

### Case No. A96A0936

Although we have reversed the verdict and judgment of the trial court, the enumerated errors alleged by Builders and Brinser may recur when the case is retried. Hence, we will also address these enumerations.

6. In their first enumeration of error, Builders and Brinser assert the trial court erred in permitting a lay witness to testify as to whether the tractor-trailer driven by Brinser could have stopped in time if the brakes were in working order. Witness Debbie Sansing was following the tractor-trailer driven by Brinser. According to Sansing, she observed the speed of the truck, the truck's brake lights come on when the traffic light turned yellow, the distances the truck traveled when the traffic light was green, yellow and red, and the collision. In addition, Sansing testified regarding her experience observing cars and trucks driving up and down the highways, on hills, and valleys, while stopping and braking.

Plaintiffs' counsel asked Sansing: "At the speed the truck was traveling, at the time you saw the brake lights come on, had the brakes been working, do you think he could have stopped at his speed?" Defense counsel objected to this question on the ground that it called for a conclusion he was not sure the witness knew how to answer.

It is well established that a lay witness may express opinions regarding traffic signals, speed, distance, and stopping distances based on the witness's observations. *Whidby v. Columbine Carrier*, 182 Ga. App. 638, 645 (6) (356 SE2d 709) (1987);[2] *Witt v. Robbins*, 163 Ga. App. 182, 183 (2) (292 SE2d 894) (1982). "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor." OCGA § 24-9-65. In addition, " '[i]t has long been the rule in this State that where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the

---

[2] This case was overruled on other grounds in *Pender v. Witcher*, 194 Ga. App. 72 (2) (389 SE2d 560) (1989). However, the *Pender* case was subsequently vacated when the Supreme Court reversed the case, and the decision of the Court in *Whidby* remains viable authority. *Pender v. Witcher*, 196 Ga. App. 856 (397 SE2d 193) (1990).

determination of the jury.' [Cits.]" *Whidby*, supra at 645. See also *Ewing v. Johnston*, 175 Ga. App. 760, 766 (3) (334 SE2d 703) (1985).

We find the trial court did not err in permitting Sansing to testify to her opinion because she included the reasons therefor.

7. Builders and Brinser next contend it was error to admit evidence of Brinser's prior traffic violations. This enumeration lacks merit.

Brinser was asked whether he had received any prior traffic convictions or informed Builders of such citations. While the trial court had previously ruled, pursuant to a motion in limine, that such evidence would not be admitted, the Fouts attempted to cross-examine Brinser concerning a form filled out by Brinser for Builders. This form inquired as to previous traffic violations in the 12-month period prior to completing the form and indicated no violations. Allegedly, the form was contradicted by a United States Department of Transportation form, which showed one violation.

The record shows that the trial court instructed the jury that it was to disregard any moving or non-moving traffic violations which Brinser may have had prior to the motor vehicle accident. Builders and Brinser did not object nor request a mistrial or additional curative instructions. Therefore, we find this enumeration to be without merit. See *Smith v. State*, 261 Ga. 512 (407 SE2d 732) (1991).

8. In their third enumeration of error, Builders and Brinser claim the trial court erred in permitting a DOT engineer to testify whether the State of Georgia was negligent in designing the intersection and signal timing at the intersection. Defense counsel objected on the ground that the question sought testimony as to the ultimate issue in the case.

Pursuant to OCGA § 24-9-67, "[t]he opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." In this case, the DOT engineer was qualified as a signal engineer, was familiar with the intersection in question, and was familiar with DOT signaling records at the intersection in question. Moreover, he testified that traffic and safety engineering were not simple, and he recited the factors considered by the DOT in complying with the Manual for Uniform Traffic Control Devices at this intersection.

Based on the foregoing, we cannot find that the trial court abused its discretion in allowing the DOT engineer to respond to the question regarding DOT negligence. The average layperson is not familiar with design and function features of traffic control devices, and it is well established that an expert witness may testify even as to the ultimate issue of fact where the inferences to be drawn from the evidence are beyond the ken of jurors. *Three Notch Elec. Member-*

*ship Corp. v. Bush*, 190 Ga. App. 858, 859 (2) (380 SE2d 720) (1989).

Furthermore, while Builders and Brinser argue in their reply brief that the DOT engineer's testimony was also irrelevant, they failed to raise this objection at trial and, therefore, waived their objection on this ground. *Ramey v. Leisure, Ltd.*, 205 Ga. App. 128, 131 (2) (421 SE2d 555) (1992).

9. The trial court correctly denied Builders and Brinser's motion for directed verdict on the issues of lost earnings and correctly charged the jury on the issue of lost earnings. At the close of the evidence, Builders and Brinser moved for a directed verdict on the ground that Gracie Fouts' claim for lost earnings was more accurately characterized as a claim for lost profits. Such a claim for lost profits, they argued, should be dismissed since Gracie Fouts failed to produce sufficient evidence to allow the jury to compute lost profit. The trial court denied this motion and charged the jury as to lost earnings. Builders and Brinser then objected to the charge on the ground that lost profits are different than lost earnings.

" 'A directed verdict . . . is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict. [Cit.]' [Cit.]" (Emphasis in original.) *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2 (1) (392 SE2d 268) (1990). In the present case, the record shows that Gracie Fouts offered her own testimony, as well as tax returns, federal 1099 forms, information from Tupperware establishing her income from personal sales and unit sales, and testimony from two distributors of the Tupperware company. Contrary to Builders and Brinser's argument, we conclude this evidence did support a claim for lost *earnings*. See *Beal v. Braunecker*, 185 Ga. App. 429, 433 (5) (364 SE2d 308) (1987); *Kroger Co. v. Perpall*, 105 Ga. App. 682, 685 (3) (125 SE2d 511) (1962). Thus, we find no error in the trial court's denial of Builders and Brinser's motion for directed verdict on this issue. This finding is further supported by the jury's verdict in favor of Gracie Fouts on this issue. *Ga. Power Co. v. Hinson*, 179 Ga. App. 263, 266 (2) (346 SE2d 73) (1986).

Based on the foregoing, we further find that the trial court did not err in charging the jury regarding lost earnings. Even if the evidence was "arguably insufficient to provide a basis for calculation of the amount of lost earnings with reasonable certainty," reversal is not mandated since the trial court charged the jury that lost earnings were properly recoverable if measured by " 'the value of the earnings which the evidence shows with reasonable certainty that [she has] lost as a result of [her] injur[y].' " *Williams v. Adams*, 170 Ga. App. 35, 36 (316 SE2d 1) (1984).

10. The trial court correctly denied Builders and Brinser's motion for directed verdict on the issue of negligent maintenance of

brakes on the tractor-trailer and correctly charged the jury regarding Builders and Brinser's duties to maintain operational brakes on the tractor-trailer. At the close of the evidence, Builders and Brinser moved for directed verdict as to this issue, maintaining the Fouts failed to introduce any evidence that Builders or Brinser had actual or constructive knowledge of the defective condition of the brakes. The trial court denied this motion and charged the jury concerning the maintenance and operation of the brakes.

The evidence shows that Georgia DOT inspector Lillard checked all of the undamaged brakes on the tractor-trailer and testified that (1) three of the nine brakes were out of adjustment and (2) the truck should have been "out of service." Based on this evidence, the jury was authorized to conclude that Builders and Brinser could have and should have known of the defective condition. Contrary to Builders and Brinser's argument, the Fouts were not obligated to prove that Builders and Brinser had actual knowledge of the defective condition of the brakes. " 'The owner or driver of a motor vehicle must exercise reasonable care in the inspection of his machine to discover any defects that may prevent its proper operation, and is chargeable with knowledge of any defects which such inspection would disclose.' [Cit.]" *Cruse v. Taylor*, 89 Ga. App. 611, 615 (80 SE2d 704) (1954).

We read nothing in *Atlanta Metallic Casket Co. v. Hollingsworth*, 104 Ga. App. 154, 162 (6) (121 SE2d 388) (1961), suggesting that the brakes must have been tested and shown to be defective *prior* to their failure. The fact that Lillard tested the brakes after the truck was towed, and not at the scene of the accident, merely goes to the weight of her testimony.

Based on the foregoing, the trial court did not err in denying Builders and Brinser's motion for directed verdict on this issue. Likewise, this evidence was sufficient to authorize the trial court to charge the jury regarding Builders and Brinser's duties to maintain operational brakes on the tractor-trailer. Id.

*Judgment reversed in Case No. A96A0935. Judgment affirmed in Case No. A96A0936. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 21, 1996 —

Coppedge, Goddard & Leman, Warren N. Coppedge, Jr., James A. Hammontree, for appellants.

Dennis, Corry, Porter & Gray, William E. Gray II, Stephanie F. Goff, Jacob S. Fisher, for appellees.