A09A1912. GREEN et al. v. KEY CUSTOM HOMES, INC.
(692 SE2d 56)

ADAMS, Judge.

Robert W. and Heather J. Green brought a claim for breach of contract against Key Custom Homes, Inc. d/b/a Key Custom Homes ("KCH"), arising out of the construction of their home.[1] KCH counterclaimed, alleging that it was the Greens who breached the parties' contract.[2] The jury found in favor of KCH, and the Greens appeal from the trial court's denial of their motion for new trial.

Michele and Randy Edmondson are the owners and officers of KCH. Prior to the events at issue, the Greens rented a house from the Edmondsons, and the two couples were friends. In 2006, the Edmondsons agreed to sell the Greens land for the construction of a home, and the parties signed a Real Estate Sales Contract for the land on or about June 16, 2006 (the "Sales Contract"). The Sales Contract provided that KCH would "build the Greens['] home on their lot at the cost of building the house plus 10%" and further specified that "all costs related to building the home will be disclosed between both parties, the buyer and the seller. . . ."

On or about July 18, 2006, the parties entered into a second agreement for the construction of the Greens' home (the "Construction Agreement"), which provided that the Greens would pay the cost of building and would also pay KCH "for the performance of work and furnishing of materials, under this Agreement the sum of . . . 10% of [the] cost to build [the] house." The agreement estimated this amount at $17,147.20 to be paid in four installments: (1) 60 percent to be paid after the foundation was poured; (2) 20 percent at the "dry in phase (roof on house w-shingles)"; (3) 10 percent when the sheet rock was hung; and 4) the balance when the county issued

---

[1] The Greens amended their complaint shortly before trial to add a claim of fraud, but the trial court dismissed that claim at the close of the Greens' evidence.

[2] KCH also asserted claims for defamation, interference with business relations and intentional infliction of emotional distress, but the only claim submitted to the jury was the breach of contract claim.

the approval on final inspection. The Construction Agreement provided that subcontractors and suppliers would be paid by the Greens from draws on their construction loan. KCH was required to review all invoices before requesting a draw, and the Greens were required to pay KCH within 24 hours in order to comply with "the requirement of the builder to pay the suppliers and the subcontractors on a prompt payment schedule."

Shortly after construction began, the Greens began to have concerns about how the draw payments were handled. Michele Edmondson worked directly with the Greens on the project, and she submitted the draw requests to them. The Greens asked Michele to provide detailed supplier/subcontractor invoices so they could verify the amount of the draws, but they assert that she was disorganized and inconsistent about providing the back-up documentation. Nevertheless, between the months of June and November 2006, the Greens asserted that they paid KCH a total of $152,758.10.

Michele Edmondson testified that she worked to provide documentation and invoices to support the draw requests, but the Greens wanted detailed information beyond that normally provided by suppliers and subcontractors. Moreover, the Greens were late in paying KCH, and on occasion she had to pay subcontractors out of her own funds or carry balances. For example, the first subcontractor submitted a request on or about August 2 for a $3,000 draw, but the Greens did not pay within the required 24-hour period because they did not want to dip into their savings. Michele paid the subcontractor herself, and was reimbursed later. The Construction Agreement also required the Greens to pay KCH the first installment of 60 percent after the foundation was poured on August 11, 2006, but Michele did not receive payment in full until September 6.

Things came to a head on or about November 9 when the Greens balked at paying a $10,000 draw request without seeing invoices to verify the amount. The Greens contend that because Michele never provided sufficient back-up documentation for the draw, which they assert was a breach of the parties' contracts, they refused to pay. But Michele said that the Greens would not accept the standard documentation, which is usually priced out by square footage. Instead, the Greens wanted to know "how many screws, how many rolls of tape" and "how many buckets of mud" the drywall contractor intended to use in the house before they would pay anything. Michele attempted to get more detailed information for them, and even personally guaranteed payment for the drywall in order to complete the house. She also allowed the drywall contractor to use water from a lot she owned because the Greens had padlocked the water outlets on their lots to prevent anyone from stealing their water. Moreover, Michele said that the Greens began paying suppliers directly and did

YALE LAW LIBRARY

not always give her information about what they had paid, resulting in confusion about the amounts outstanding.

When the $10,000 payment was not forthcoming, KCH made a formal written demand on November 21, 2006, for the amounts Michele believed the Greens owed under the Construction Agreement. The Greens, in turn, terminated KCH's services on November 27. And on November 30, 2006, KCH filed a lien on the Greens' home because the accounts for the subcontractors were in KCH's name and Michele Edmondson was unclear as to what had been paid. The Greens filed this lawsuit in March 2007.

At trial, the Greens calculated that KCH had paid $122,938.05 in connection with the construction of their home, and conceded that KCH was entitled to an additional ten percent of that figure, or $12,293.81. Additionally, the Greens paid $60,474.76 directly to subcontractors and suppliers while KCH was working on the house. They acknowledged that under the Construction Agreement, KCH is entitled to ten percent of that amount, or $6,047.48. The Greens contended, therefore, that KCH was entitled to a total of $141,279.34, but because they actually paid KCH $152,758.10, KCH was overpaid and owed them $11,478.76 under the Construction Agreement.

KCH argued, however, that it was entitled to ten percent of the amount spent to complete the house, even after the Greens terminated its services. KCH's documentation indicated that the Greens' house cost a total of $273,464.36, entitling them to a fee of $27,346.44. When the payments were netted out and additional damages included for equipment repairs during construction, KCH calculated its damages at $3,937.30.

After the jury awarded KCH $9,047 in compensatory damages, and $23,000 in attorney fees, the Greens moved for a new trial, which the trial court denied following a hearing.

1. The Greens contend that the trial court erred in denying their motion for a new trial because there was no evidence to support the verdict.

> Where a jury returns a verdict, the same must be affirmed on appeal if there is any evidence to support it, and the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict. We review a denial of a motion for a new trial according to this same standard.

(Citations omitted.) *R. O. C. v. Estate of Bryant*, 279 Ga. App. 652, 653 (1) (632 SE2d 429) (2006). Thus, "a jury verdict, after approval by the trial court, and the judgment thereon will not be disturbed on appeal

if supported by any evidence, in the absence of any material error of law." (Punctuation and footnote omitted.) *Building Materials Wholesale v. Triad Drywall*, 287 Ga. App. 772, 774 (1) (653 SE2d 115) (2007).

So viewed, the evidence, although in conflict, supported a finding that the Greens had breached the parties' contract from the outset by failing to pay either the draws or KCH's fee in a timely fashion, and by insisting upon detailed documentation not contemplated by the parties' agreement. And the jury was entitled to find that the Greens breached the agreement by terminating KCH's services. Accordingly, the evidence authorized the jury to find in favor of KCH.

2. The Greens also contest the amount of compensatory damages awarded KCH, questioning how the jury arrived at the number $9,047 when KCH was claiming only $3,937.30.

"The issue of damages is a matter for the jury, and a reviewing court should not interfere with the jury's damages award unless it is so small or excessive that it justifies an inference of gross mistake or undue bias." (Footnote omitted.) *Green v. Proffitt*, 248 Ga. App. 477, 478 (1) (545 SE2d 623) (2001). See also OCGA § 13-6-4. Moreover,

> [a]bsent compelling evidence, we will defer to the ruling of the trial court on a motion for new trial based on inadequate or excessive damages. The trial court's decision on a motion for a new trial will be upheld on appeal unless it was an abuse of discretion. Nevertheless, a verdict strongly against the weight of the evidence may require that we reverse the trial court's ruling on a motion for new trial.

(Punctuation and footnotes omitted.) *Marzullo v. Jim Ellis Motors*, 253 Ga. App. 706, 707 (2) (560 SE2d 309) (2002). And under any measure of damages, "[a]n injured party can not be placed in a better position than he would have been in if the contract had not been breached." (Citations and punctuation omitted.) *Webb v. Hancock Plumbing &c. Co.*, 194 Ga. App. 715, 716 (2) (391 SE2d 697) (1990).

The issue of damages in this case was confusing and the parties' calculations were based upon numerous invoices and checks showing payment by both parties. The parties could not even agree, for example, on the amount KCH paid to suppliers and subcontractors or the amount the Greens reimbursed them for such payments. Against this confusion, the jury was instructed simply that the damages recoverable for a breach of contract "are such as arise naturally and according to the usual course of things from the breach and such as the parties contemplated when the contract was made as the probable result of the breach." Applying this law to the evidence, the jury awarded KCH $5,109.70 more than it requested in damages.

We have found that the evidence supported a finding that the Greens breached the Construction Agreement by firing KCH, and thus the corporation would be entitled to recover what it would have earned under the Agreement in the absence of the breach. KCH, therefore, would be entitled to recover its fee based upon the total cost to build the house. See generally *Broadcast Concepts v. Optimus Financial Svcs.*, 274 Ga. App. 632, 635 (3) (618 SE2d 612) (2005); *Dill v. Chastain*, 234 Ga. App. 770, 771 (507 SE2d 872) (1998).[3]

KCH calculated its damage figures under this theory of recovery and presented total damages of $3,937.30. And KCH has offered no basis to support the jury's award in excess of this amount; instead it simply argues that the award is not so excessive as to warrant our interference. But the award, which is more than twice what KCH requested, cannot be deemed not excessive in the absence of some grounding in the evidence.[4] Because we can find nothing in the evidence to support the amount of compensatory damages awarded, we conclude that the Greens are entitled to a new trial on the issue of damages. *Building Materials Wholesale v. Triad Drywall*, 287 Ga. App. at 777 (2); *Marzullo v. Jim Ellis Motors*, 253 Ga. App. at 709 (2).

3. The Greens also argue that the evidence did not authorize the jury's award of attorney fees under OCGA § 13-6-11 on the ground that the Greens had been stubbornly litigious. But because we have reversed the award of compensatory damages, we do not reach the merits of the Greens' attorney fee argument as such damages are merely ancillary to the compensatory damage award. Accordingly, we remand the case for a new trial on both compensatory damages and attorney fees. See *Building Materials Wholesale v. Triad Drywall*, 287 Ga. App. at 777-778 (3).

4. The Greens further assert, as a separate enumeration of error, that the trial court erred in allowing Michele Edmondson to testify about other houses she had built, that she had come under budget on those houses and that the houses had appraised well. But the Greens presented no argument or citation of authority in support of this

---

[3] The Greens argued at trial that Michele Edmondson released them from the Construction Agreement in an e-mail when she told them that they had "a choice to find another builder," but they would not find one willing to do the work at the same price. But the jury was not required to interpret this statement as a release from their obligations under the agreement; rather, the jury could have interpreted it simply as a statement that the Greens would not be able to find another contractor willing to work at the contract price.

[4] Although we do not know how the jury calculated its damages, we note that the overage roughly equals the difference in the parties' calculations of what KCH paid while working on the house. KCH presented evidence that it had written checks totaling $128,040.91, and the Greens placed that figure at $122,938.05, a difference of $5,102.86. KCH would not be entitled to an additional award of this amount because its damage calculations relied upon the higher figure, thus accounting for the difference. If the jury awarded that amount over and above KCH's calculated damages, it would constitute a windfall.

enumeration — other than simply to assert error — and this enumeration is deemed abandoned. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Stone v. Stone*, 295 Ga. App. 783, 786 (2) (673 SE2d 283) (2009).[5]

5. KCH argues that the Greens failed to pay the supersedeas bond as ordered by the trial court, and asserts that we should deny their appeal on that basis. "However, this appeal having been heard, the matter of the bond is moot." (Punctuation and footnote omitted.) *Ervin v. Turner*, 291 Ga. App. 719, 723 (6) (662 SE2d 721) (2008). Even if the Greens did not post the supersedeas bond, "a failure to post a supersedeas bond does not, as a general rule, bar the appeal." (Footnote omitted.) Id.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 11, 2010.

*Dennis G. Dozier, Bethany M. Hillis,* for appellants.
*Ratchford & Rafter, Richard R. Rafter,* for appellee.

---

[5] In any event we note that the Greens belittled Michele Edmondson's skills as a builder at trial, opening the door for KCH to present evidence of her successful building experience in rebuttal. Moreover, the trial court did not allow this line of testimony to go unfettered as it sustained several of the Greens' objections on the issue. The trial court, therefore, did not abuse its discretion in allowing the evidence.