## A11A1803. ANGULO v. THE STATE.
### (725 SE2d 802)

DOYLE, Presiding Judge.

After a jury trial, the DeKalb County Superior Court convicted Gustavo Angulo of four counts of armed robbery[1] and four counts of aggravated assault.[2] After the trial court granted in part and denied in part Angulo's amended motion for new trial, Angulo appealed, arguing that the trial court erred by failing to record trial counsel's motion to strike a juror for cause; the trial court erred by admitting evidence of his prior conviction; and he received ineffective assistance from trial counsel. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[3] the evidence establishes that on July 6, 2007, Angulo and six or seven accomplices (all African-American except for Angulo) robbed at gunpoint five men in the Northcrest Apartments parking lot. All five victims recognized Angulo and identified him in a photographic lineup. Four of the victims testified at trial and also identified Angulo at that time. One of the victims, Adrian Armenta, went to high school with Angulo and knew his name as Gustavo.

The State presented similar transaction evidence of a 2004

---

[34] See Division 5, supra.

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-21 (a).

[3] See *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

robbery in which Angulo and four African-American accomplices assaulted and attempted to rob him. The victim testified that he recognized Angulo from around the apartment complex, but he did not testify in the case against Angulo at the time because the victim had moved out of state and did not receive the court notices.

Angulo took the stand and testified that he pleaded guilty to a 2005 charge of theft by taking of a motor vehicle, but denied being involved in the 2007 armed robbery at Northcrest. He testified that he was either at home or church at the time, but neither his mother nor his pastor testified on his behalf. Angulo testified that he lived about a mile from Northcrest Apartments with his mother, and he knew Armenta from high school.

The jury found Angulo guilty of five counts of armed robbery and five counts of aggravated assault, and Angulo filed a motion for new trial, which the trial court granted in part by vacating one conviction for armed robbery and directing a verdict of acquittal as to one of the aggravated assault counts based on insufficiency of the evidence.

1. Angulo first contends that the trial court erred by failing to record jury voir dire, leading to an incomplete record upon which he could challenge the trial court's failure to excuse three jurors for cause. We disagree.

"[R]eporting of voir dire is not required in felony cases except those in which the death penalty is sought."[4] Although objections made during voir dire and the rulings thereon should be recorded,[5] a defendant still must show error in order for a conviction to be reversed upon the failure of a trial court to record voir dire.[6]

Angulo maintains that trial counsel moved to strike jurors 17, 20, and 25 for cause, which motions were denied without recordation. He contends that failure to record his objections to these jurors and the rulings thereon by the trial court amounted to reversible error on the part of the court. Although counsel attempted to place the bases for his objections on the record at the close of voir dire, he only articulated a general objection of having "issues" with the jurors. Here, the only harm alleged by Angulo was that he was forced to use his peremptory strikes to remove some jurors because the trial court denied his motion to remove them for cause, but he does not contend that he would have removed other jurors instead.[7] In fact, a prosecutor's affidavit filed in the trial court in response to Angulo's motion for new trial states that Angulo did not use all of his

---

[4] *McConnell v. State*, 263 Ga. App. 686, 690 (5) (589 SE2d 271) (2003).

[5] See *State v. Graham*, 246 Ga. 341, 343 (271 SE2d 627) (1980).

[6] See *Primas v. State*, 231 Ga. App. 861, 862-863 (2) (501 SE2d 28) (1998).

[7] See *Johnson v. State*, 283 Ga. App. 524, 525 (1) (642 SE2d 170) (2007); *McConnell*, 263 Ga. App. at 690 (5); *Primas*, 231 Ga. App. at 862, n. 3 (collecting cases).

peremptory strikes during voir dire.

To the extent that Angulo argues that there may be some unknown error that would have been shown had voir dire been recorded, such argument does not support reversal. "[A] general . . . hope of reversible error during voir dire does not win a new trial on the ground that a record should have been made so as to accommodate a search for error now buried in unrecorded history."[8] Thus, Angulo has failed to show harm, and this enumeration is without merit.

2. Next, Angulo contends that the trial court erred by admitting evidence of his prior conviction for impeachment purposes. Specifically, he contends that the trial court applied a more liberal standard to determine whether to admit evidence of Angulo's 2005 conviction for theft by taking of an automobile.

Evidence of a defendant's prior convictions

> is admissible if its probative value substantially outweighs its prejudice to the defendant. As OCGA § 24-9-84.1 (a) (2) provides: evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant.[9]

Even if the trial court erred by announcing the incorrect standard,[10] any error is harmless based on the overwhelming evidence in this case because the five victims in the case separately identified Angulo from a photographic lineup, one victim recognized Angulo from school, and all four victims who testified in court also were able to make in-court identifications of the defendant. Accordingly, any error from admission of this evidence based on a more lenient standard was harmless.[11]

3. Finally, in three sub-arguments,[12] Angulo contends that he received ineffective assistance of counsel.

---

[8] *Primas*, 231 Ga. App. at 863 (2).

[9] (Punctuation and emphasis omitted.) *Johnson v. State*, 307 Ga. App. 791, 792 (706 SE2d 150) (2011).

[10] See id. at 793.

[11] See id.

[12] In the future, we caution counsel to properly enumerate each error in the appropriate portion of her appellate brief. See Court of Appeals Rules 22, 25 (a), (c).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[13]

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[14]

(a) Angulo contends that counsel was ineffective for failing to have voir dire transcribed; however, as explained in Division 1, Angulo failed to establish how he was harmed by this failure and, therefore, he cannot establish prejudice pursuant to *Strickland*.[15]

(b) Next, Angulo contends that counsel was ineffective for failing to object to the State's line of questioning, which impermissibly shifted the burden of production by questioning his lack of corroborating testimony for his alleged alibi. We disagree.

---

[13] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[14] See id. at 690 (III) (A). See also *Moore v. State*, 301 Ga. App. 220, 228 (6) (687 SE2d 259) (2009).

[15] See, e.g., *Edwards v. State*, 282 Ga. 259, 263 (8) (a) (646 SE2d 663) (2007).

Either party in a criminal trial is allowed to draw inferences during closing argument regarding the other party's failure to produce witnesses who could have given favorable testimony.[16] Necessarily, there must be "evidence placed before the jury that the missing [witnesses] have knowledge of facts relevant and material to the case."[17] Accordingly, it was not erroneous for the State to inquire into the knowledge of Angulo's mother or pastor regarding his alibi during cross-examination, and therefore, Angulo has failed to establish that trial counsel was ineffective for failing to object to the line of questioning.[18]

(c) Finally, Angulo contends that trial counsel was ineffective because he failed to object to the improper use of similar transaction evidence. Specifically, he contends that trial counsel should have objected to the improper similar transaction instruction given to the jury, which stated that the limited purpose of the evidence was to show *identity*, state of mind, knowledge or intent, even though the State had proffered the evidence only for purposes of bent of mind or modus operandi.

Nevertheless, Angulo has failed to establish prejudice as a result of any failure on the part of trial counsel to object to the trial court's inappropriate addition of the word identity to the list of appropriate purposes for which the jury could consider the similar transaction evidence. First, Angulo does not argue that the evidence was incorrectly admitted and presented to the jury. Thus, regardless of the limiting instruction, the evidence was properly presented. Moreover, the four testifying eyewitness victims from the 2007 robbery separately identified Angulo in photographic lineups and in court. The evidence was overwhelming, and therefore, Angulo cannot establish that the evidence resulted in a guilty verdict.[19]

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 9, 2012.

*Chaunda Brock, Deah B. Warren*, for appellant.

---

[16] See *Morgan v. State*, 267 Ga. 203, 205-206 (3) (476 SE2d 747) (1996).

[17] Id. at 206-207 (3).

[18] See *Sims v. State*, 281 Ga. 541 (2) (640 SE2d 260) (2007) (failure to assert meritless objection cannot constitute ineffective assistance of counsel).

[19] See *Moore*, 301 Ga. App. at 225 (4) ("[I]t is highly unlikely that the admission of the similar transaction evidence impacted the verdict. We thus fail to see how any error in the limiting instruction contributed to the judgment or harmed [Angulo]"), citing *Nesbitt v. State*, 296 Ga. App. 139, 140 (2) (673 SE2d 652) (2009).

*Robert D. James, Jr., District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.