**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 11, 2024**

# In the Court of Appeals of Georgia

A24A1098. BAKER v. CUTHBERTSON, AS THE EXECUTOR OF THE ESTATE OF ROBERT MOFFITT, DECEASED.

DILLARD, Presiding Judge.

Tracy Cuthbertson—the executor of Robert Moffitt's estate—sued Melissa Baker for breach of contract, fraud, and breach of fiduciary duty, alleging that she exercised undue influence over her father and fraudulently obtained money from him while he was suffering from dementia. The jury found in favor of Cuthbertson, and Baker appeals. Specifically, Baker argues the trial court erred in (1) admitting irrelevant or inordinately prejudicial evidence (*i.e.*, nude photographs of Baker); (2) entering a verdict inconsistent with Georgia law, as the verdict was unclear as to whether punitive damages were awarded based on tort or contract claims; and (3) entering a judgment against her when there was insufficient evidence of the egregious

conduct necessary to warrant the imposition of punitive damages and "no . . . finding of clear and convincing evidence as required by Georgia law." For the following reasons, we affirm.

But first, a brief housekeeping matter. Baker has not provided us with a complete chronological recitation of all the *material* facts necessary to decide this appeal, which is in violation of our rules.[1] This matters in *any* appeal, but is especially frustrating in one with a 528-page record, a 700-page trial transcript, and four volumes of exhibits. And because Baker has not provided us with a complete recitation of the material facts (instead primarily referencing her own self-serving testimony, which is skewed *against* the jury's findings), she has significantly hindered our ability to delineate the relevant facts—especially in the light most favorable to the jury's verdict (as we are required to do).[2] Suffice it to say, we are not obliged to "cull the record on behalf of a party, particularly in a case such as this where the record is voluminous."[3]

---

[1] *See* CT. APP. R. 25 (a) (5) (requiring an appellant's brief to include "[a] statement of the case that sets out the material facts relevant to the appeal").

[2] As explained below, on appeal from a jury verdict, we view the evidence in the light most favorable to the prevailing party. *See infra* note 5.

[3] *Callaway v. Willard*, 351 Ga. App. 1, 5 (1) (830 SE2d 464) (2019) (punctuation omitted)).

So, while it appears the parties' briefs and our *independent* review of the record have likely identified the portions of the record and transcripts necessary to resolve the particular claims of error raised, we caution that "if we have missed something in the record or misconstrued an argument, the responsibility rests with [Baker's] counsel."[4]

That said, viewing the evidence in the light most favorable to the jury's verdict,[5] the record shows that Baker—who was in her thirties at the time—and Moffitt, a man in his eighties, met in 2014 when he found one of her horses on his land.[6] At the time, Moffitt sold hay, and Baker began buying hay from him on a weekly basis. Moffitt and Baker exchanged numbers, and eventually, he became friends with her and her family.

---

[4] *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 18 n.3 (849 SE2d 746) (2020) (punctuation omitted).

[5] *See Ga. Trails & Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 208 (855 SE2d 103) (2021) ("On appeal from a jury verdict, we affirm if any evidence supports the jury's verdict, construing the evidence in the light most favorable to the prevailing party." (punctuation omitted)).

[6] Neither party cites to any testimony or evidence detailing exactly how old the parties were at the time they met in 2014, but there is testimony that—at some point during the approximately four-year relationship—Baker was 34 years old and Moffitt was 83 years old. It is also undisputed that, during their relationship, Moffitt was diagnosed with dementia and Alzheimer's disease and Baker was aware of these conditions. Even so, it is unclear when Moffitt's mental health first began to decline or when Baker became aware of it.

According to Baker, it was a "friendship of helping him," and she began regularly checking in on him.

Around the beginning of 2016, Baker was going through a separation with her husband, and the following spring, she and her four children moved into Moffitt's home (the "Casteel home"). Baker testified that she paid the mortgage, Moffitt paid a second mortgage, and they both paid for different utilities. On June 15, 2016, only a few months after Baker moved in with Moffitt, he executed a new will, which provided that it was "made in contemplation of his marriage to MELISSA JOY BAKER and shall not be revoked by such event." As to the Casteel home, the will provided, *inter alia*, that upon his death, Baker could instruct the trustee of his estate to sell it at fair-market value, and she would receive 60 percent of the profit, while Cuthbertson (Moffitt's daughter) would receive the remaining 40 percent.

At some point, Moffitt and Baker obtained a new homeowner's insurance policy with USAA, which was solely in her name, but Moffitt paid the premiums. Around this same time, when Moffitt was 83 years old and Baker was 34 years old, Moffitt added Baker to the mortgage and deed for the Casteel home. According to Baker, by this point, she was handling all of Moffitt's "business affairs."

4

After Baker and Moffitt obtained the new insurance policy, the Casteel property burned down, destroying all of Moffitt, Baker, and Baker's children's belongings. Two or three days after the fire, Baker received an insurance payout from USAA for $367,000, and although she claimed she deposited it in a joint account with Moffitt, she never told him that he was entitled to half of the money. Baker also received another $275,000 from the sale of the Casteel property. Among other things, Baker spent $50,000 of the proceeds on clothes and another $50,000 to buy a truck. Additionally, Baker bought a home in Powder Springs, Georgia, for approximately $430,000, and the title to that property was solely in her name.[7] When asked whether she gave Moffitt anything of value, Baker confirmed her deposition testimony that she "gave him [herself] taking care of him 110 percent until he died[,]" but she acknowledged that she failed to do so.

Indeed, in 2018, Baker dropped Moffitt off at Cuthbertson's home and immediately left. When she did so, Moffitt could "barely walk," could not hold his head up, and complained that he had "something in his stomach that [did not] belong

---

[7] Baker contends that, as consideration for titling the Powder Springs home solely in her name, Moffitt executed a new will on August 3, 2018, leaving his entire estate to his daughter. But Baker concedes the Powder Springs property is not mentioned in the 2018 will.

there." Cuthbertson immediately took Moffitt to the doctor, who discovered he had a foreign object in his stomach that needed to be surgically removed. According to Cuthbertson, when Baker discovered she had taken Moffitt to new doctors, Baker began to "verbally and emotionally torment him and abuse him to the point that he was so devastated." Baker called Moffitt—who was then 84 years old—a "weak ass motherfucker" and told him she "hated [his] guts." Thereafter, Cuthbertson found Moffitt in a fetal position, "sobbing uncontrollably and hysterical." Cuthbertson testified from that point on, "it was basically war" with Baker. Over a year later, when Moffitt became "extremely depressed and more and more despondent and isolated," Cuthbertson then moved him into an assisted living home.

On July 8, 2019, Moffitt filed a complaint against Baker for "legal and equitable relief." Specifically, Moffitt alleged numerous claims against her, including breach of contract, breach of fiduciary duty, conversion of property, and fraud; and he also sought injunctive relief. Baker filed an answer, denying all of the complaint's allegations and attaching several exhibits. On September 1, 2022, while this litigation was pending, Moffitt passed away, and Cuthbertson—as executor of his estate—was

substituted in as the plaintiff. Following discovery, the case proceeded to a multi-day jury trial.

At the conclusion of trial, the jury returned a verdict in favor of Cuthbertson, finding that Baker (1) converted Moffitt's property for her own use; (2) breached a contract she made with Moffitt under which she agreed to "take care of [him] for the rest of his life"; (3) breached a fiduciary duty she owed to Moffitt; and (4) engaged in actual, legal, or constructive fraud. The jury further found that Moffitt suffered actual damages as a result of the foregoing actions, and it awarded Cuthbertson $318,758.55. Finally, the jury awarded Cuthbertson $100,000 in punitive damages.

On June 20, 2023, the trial court entered a final judgment confirming the jury's verdict and awarding Cuthbertson $68,000 in attorney fees. Thereafter, Baker filed a motion for a new trial, summarily asserting that the verdict was strongly against the weight of the evidence. Following a hearing, the trial court denied the motion in a summary order. This appeal by Baker follows.

When a jury returns a verdict, it must be affirmed on appeal "if there is any evidence to support it, and the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the

verdict."[8] Put another way, a jury verdict, "after approval by the trial court, and the judgment thereon will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law."[9] And we review a denial of a motion for a new trial "according to this same standard."[10] With this deferential standard of review in mind, we turn to Baker's enumerated claims of error.

1. First, Baker argues the trial court erred in admitting "irrelevant and/or inordinately prejudicial evidence." We disagree.

OCGA § 24-4-401 ("Rule 401") provides that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." And under OCGA § 24-4-402 ("Rule 402"), "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as

---

[8] *Yash Sols., LLC v. New York Glob. Consultants Corp.*, 352 Ga. App. 127, 132 (1) (834 SE2d 126) (2019) (punctuation omitted); *accord Green v. Key Custom Homes, Inc.*, 302 Ga. App. 800, 802 (1) (692 SE2d 56) (2010).

[9] *Yash Sols.*, 352 Ga. App. at 132 (1) (punctuation omitted); *accord Green*, 302 Ga. App. at 802-3 (1).

[10] *Yash Sols.*, 352 Ga. App. at 132 (1) (punctuation omitted); *accord Green*, 302 Ga. App. at 802 (1).

otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible." But even if evidence is relevant under the foregoing provisions, OCGA § 24-4-403 ("Rule 403") provides it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Even so, the Supreme Court of Georgia has "explained that the exclusion of evidence under Rule 403 is an *extraordinary* remedy which should be used only *sparingly*, but also that the major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[11] Our Supreme Court has also emphasized that "in reviewing the admission of evidence under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative

---

[11] *Harris v. State*, 314 Ga. 238, 262-63 (3) (a) (875 SE2d 659) (2022) (emphasis supplied); *see Aycock v. R.J. Reynolds Tobacco Co.*, 769 F3d 1063, 1069 (1) (11th Cir. 2014) ("Because it allows a trial court to exclude evidence that is probative, Rule 403 is "an extraordinary remedy which should be used sparingly. Accordingly, the balance should be struck in favor of admissibility. . . . Rule 403's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (punctuation and citations omitted)).

value and minimizing its undue prejudicial impact."[12] Significantly, a trial court "retains broad discretion in determining whether to admit or exclude evidence, and an appellate court generally will not interfere with that discretion absent abuse."[13] And absent an abuse of discretion, we will "not interfere with a trial court's determination as to the admission or exclusion of evidence *on the grounds of relevancy* ."[14]

Here, prior to trial, Baker moved to exclude from evidence "multiple pictures of [her] exposed breasts[,]"[15] arguing they had no probative value, were highly

---

[12] *Wilson v. State*, 312 Ga. 174, 190 (2) (860 SE2d 485) (2021) (punctuation omitted); *see Sowers v. R.J. Reynolds Tobacco Co.*, 975 F3d 1112, 1122 (IV) (11th Cir. 2020) ("Courts should strike the balance in *favor of admissibility*, and look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." (punctuation omitted) (emphasis supplied)); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 96 (5th ed. 2016) ("Under Rule 403, the term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. The prejudice referenced in Rule 403 addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." (citation omitted)).

[13] *Thornton v. Hemphill*, 300 Ga. App. 647, 650 (2) (686 SE2d 263) (2009) (punctuation omitted); *accord Landry v. Walsh*, 342 Ga. App. 283, 284 (1) (801 SE2d 553) (2017).

[14] *Thornton*, 300 Ga. App. at 650 (2) (punctuation omitted) (emphasis supplied); *accord Cook v. Covington Credit of Ga., Inc.*, 290 Ga. App. 825, 826 (1) (660 SE2d 855) (2008).

[15] It appears from the record that only two such images were admitted.

prejudicial, and would cause her irreparable harm. In her response, Cuthbertson noted that Baker accidentally sent the photos to her daughter's phone; and when she apologized, Baker explained that Moffitt liked to keep pictures of that nature on his phone. Cuthbertson argued the images were relevant as to undue-influence claim to show Baker "used them as a predatory method of controlling [Moffitt's] actions in allowing her to take, or convert his property." Thereafter, the trial court denied Baker's motion in a summary order.

At trial, Baker again objected to the admission of the nude photographs, arguing they lacked any probative value and were extremely prejudicial. Baker also suggested that, even if the photographs were relevant, they were cumulative because Baker stipulated to sending them. In response, Cuthbertson argued the images should be admissible because they were intended for Baker's boyfriend, who she began dating three months after promising to take care of Moffitt for the rest of his life.[16] According to Cuthbertson, this evidence showed her intention to break that promise. And while Baker contended the images were being proffered only to embarrass her and prejudice

---

[16] Cuthbertson did not mention Baker having a boyfriend in her pre-trial response to Baker's motion to exclude the photographs. At trial, Baker claimed to have begun dating someone in the summer of 2018, but after being confronted with the exhibits at issue, she admitted that they started "lightly" dating in July 2017.

the jury against her, the trial court again denied her motion to exclude them. Indeed, the trial court found the images were admissible to show "the efficacy of whatever promises were made" and her motive in making those promises.

As previously noted, Baker first argues the images were irrelevant to the claims raised in Cuthbertson's complaint. But she fails to address any of the elements Cuthbertson was required to prove as to any of those claims. Here, the complaint alleged, *inter alia*, that Baker committed fraud when she

> knowingly, secretly, and *willfully* exploited [Moffitt's] trust by defrauding him into signing certain documents concerning sharing his property and/or assets with her while *intending* . . . to convert them, and by telling him all property remained in his name and that he should trust her with all his financial decisions.[17]

As we have explained, the tort of fraud has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) *intention to induce the party claiming fraud to act or refrain from acting*; (4) justifiable reliance; and (5) damages."[18] And at trial, the evidence showed that Baker—a woman in her thirties—befriended Moffitt

---

[17] (Emphasis supplied).

[18] *Lehman v. Keller*, 297 Ga. App. 371, 373 (1)(677 SE2d 415) (2009) (emphasis supplied).

(a man in his eighties), who began suffering from dementia either before or at some point during their relationship; and she promised to take care of him for the rest of his life. And while Baker denied ever intending to marry Moffitt, he was apparently led to believe otherwise because, after she moved in with him, he executed a new will that indicated it was "made in contemplation of his marriage to [Baker] and shall not be revoked by such event." Baker also admitted that she attempted to have sex with Moffitt at least twice and acknowledged sleeping in the bed with him 85 to 90 percent of the time when they lived together. Further, the evidence showed that Baker took control of Moffitt's finances, was added to the deed to his house, was added as a beneficiary to his will, made herself the sole beneficiary of his homeowner's insurance policy, and used funds from an insurance payout to purchase clothes, a truck, and a home solely in her name. So, to prove her fraud claim, Cuthbertson was required to show Baker *intended* to induce Moffitt—an elderly man suffering from dementia—to allow her to do all of the foregoing.[19]

---

[19] *See supra* note 18 & accompanying text.

Additionally, when evidence is offered and objected to, "if it is competent for *any purpose*, it is not erroneous to admit it."[20] And importantly, even evidence of *"doubtful* relevancy or competency should be admitted and its weight left to the jurors."[21] Here, given the significant deference we owe the trial court in determining whether to admit evidence and that even evidence of doubtful relevance should be admitted,[22] we cannot say that court abused its broad discretion in admitting the complained-of images.[23] Indeed, the trial court reasonably found that evidence Baker sent or attempted to send nude photos to a boyfriend during the time she was living with Moffitt, sleeping in his bed, promising to take care of him, and taking control of his finances and property was relevant to whether she *intended* to keep her promises

---

[20] *Mattox v. MARTA,* 200 Ga. App. 697, 700 (8) (409 SE2d 267) (1991) (punctuation omitted) (emphasis supplied); *see Austin v. Kaufman*, 203 Ga. App. 704, 708 (4) (417 SE2d 660, 664 (1992) ("If evidence can be duly admitted under any legitimate theory, it should be admitted even though it does not qualify for admission under one or more other evidentiary theories; that is, evidence should be admitted if it is admissible for any purpose." (punctuation omitted)).

[21] *Byrne v. Fierman*, 256 Ga. App. 443, 443 (1) (568 SE2d 494) (2002) (punctuation omitted); *accord Mattox*, 200 Ga. App. at 700 (8).

[22] *See supra* notes 13-14 and 21 & accompanying text.

[23] *See supra* note 13-14 & accompanying text.

to Moffitt or whether she made them only to gain control over his money and other assets.

Even so, Baker also contends the nude images should have been excluded under Rule 403 because any probative value of the photographs of her naked breasts sent by text message was substantially outweighed by unfair prejudice—*i.e.*, the evidence was cumulative and served only to embarrass her. To be sure, evidence *may* be excluded under Rule 403 if it constitutes a "needless presentation of cumulative evidence[,]"[24] and at trial, Baker admitted that she "sent [her boyfriend] or tried to send him a picture of [herself] with [her] naked boobs." But when asked about the text message at issue, Baker initially responded that she was not "official[ly]" dating her boyfriend until 2018; and as noted *supra*, she sent Moffitt to live with Cuthbertson in 2018. Then, Cuthbertson's attorney confronted her with the relevant text message, showing that she sent it in 2017, only a few months *after* she promised to take care of Moffitt for the rest of his life and obtained half of his interest in the Casteel property. At that point, she conceded that she was "lightly dating" her boyfriend in July 2017. Baker

---

[24] *See* OCGA § 24-4-403 (providing that evidence "*may* be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" (emphasis supplied)).

15

also testified that July 2017 was only the beginning of their relationship, and she did not normally send nude photographs to someone at the outset of a relationship. So, although Baker generally admitted that she sent (or attempted) to send nude photographs to her boyfriend, the actual text was significantly probative of whether she did so in 2017 at a time when she was controlling Moffitt's finances or in 2018 when he no longer lived with her.

Additionally, and importantly, an appellant must "show harm as well as error to prevail on appeal; error to be reversible must be harmful."[25] And here, considering the overwhelming evidence that Baker—a woman in her thirties—fraudulently induced Moffitt—a man in his eighties suffering from dementia—to (1) give her control of all of his "business affairs"; (2) add her to the deed on his home; (3) make her the sole beneficiary of the homeowner's insurance purchased for *his* home; (4) purchase clothes and a truck, as well as a new home solely in her name, with insurance proceeds received after *his* house burned down; and (5) make her a beneficiary in his will "in contemplation of his marriage [to her][,]" we cannot say the admission of the

---

[25] *Alligood v. Piedmont Med. Care Corp., Inc.*, 369 Ga. App. 171, 172 (1) (892 SE2d 790) (2023); *see Tafel v. Lion Antique Cars & Invs., Inc.*, 297 Ga. 334, 340 (5) (773 SE2d 743) (2015) (noting that to prevail on appeal, an appellant must show harm as well as error).

challenged evidence harmed Baker.[26] Indeed, she admitted to all of the foregoing at trial, but claimed that, in exchange, she promised to take care of Moffitt for the rest of his life—which she conceded she did not do. So, given the overwhelming evidence in support of Cuthbertson's undue-influence claim, it is highly probable that admission of the text message with nude images she sent or attempted to send to her boyfriend in 2017 did not meaningfully contribute to the jury's verdict.[27]

---

[26] *See Dorsey v. Kennedy*, 284 Ga. 464, 464-65 (1), (2) (668 SE2d 649) (2008) (finding that, given the two years of the defendant's exploitation of the elderly victim leading up to the execution of a will, there was overwhelming evidence to support the jury's verdict that the "document" presented by the defendant was the product of undue influence and the victim lacked the mental capacity to execute a will); *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356) (1997) ("Evidence of a confidential relationship between the grantor and the grantees; the advanced age of the grantor; the grantor's terminally ill physical condition; the grantor's living arrangement; and evidence of the grantor's reliance on the grantees, especially the daughter with whom she was residing, for care, shelter and transportation was sufficient to present the issue of undue influence to the jury."); *see also Escamilla v. State*, 344 Ga. App. 654, 655-56 (1) (811 SE2d 77) (2018) (holding that jury was authorized to find defendant used deception or undue influence to obtain money from a victim, who was suffering from dementia and was confused, for her own personal gain when, *inter alia*, she deposited $300,000 of his money into her own account to spend on a car, clothes, dinner, and a vacation).

[27] *See Pope v. Propst*, 179 Ga. App. 211, 216 (10) (345 SE2d 880) (1986) ("Considering the overwhelming evidence of fraud against the defendant, it is unlikely that the admission of [certain] photographs, assuming *arguendo* it was error to admit them, contributed to the jury verdict. Appellant must show harm as well as error to prevail."); *see also Angulo v. State*, 314 Ga. App. 669, 671 (2) (725 SE2d 802) (2012)

2. Next, Baker argues the trial court erred in entering a verdict that is unclear as to whether punitive damages were awarded under the tort or contract claims; but she has waived this claim of error.

In its final judgment, the trial court noted the jury found in favor of Cuthbertson as to her claims of breach of contract, fraud, and breach of fiduciary duty. And Baker is correct that the verdict form summarily awarded punitive damages without specifying the claim for which they were awarded. Instead, the verdict form merely indicated that the jury could award punitive damages to Cuthbertson if it "found for the Plaintiff against the Defendant[,]" and the jury awarded $100,000 in such damages. The trial court's order affirming the jury verdict also summarily noted that punitive damages were awarded without any further clarification.

---

(affirming a jury verdict when, even if the trial court erred in announcing an incorrect standard in determining whether to admit evidence, there was overwhelming evidence to support it); *Robinson v. State*, 265 Ga. App. 481, 482 (1) (594 SE2d 696) (2004) (finding a trial court error harmless when overwhelming evidence supported the jury's verdict and noting that the test for harmless error is whether it is "highly probable" the error contributed to the verdict).

As a rule, punitive damages "may only be awarded in *tort* actions in which there is a valid claim for actual damages."[28] And we have specifically held that "[p]unitive damages . . . are not recoverable for breach of contract actions."[29] Nevertheless, our Supreme Court has explained that

> [t]he contemporaneous objection rule, which has been a cornerstone of Georgia trial practice for over 150 years, generally requires that, in order to preserve a point of error for the consideration of an appellate court, counsel must take exception to the alleged error at *the earliest possible opportunity* in the progress of the case by a proper objection made a part of the record.[30]

---

[28] *Esprit Log & Timber Frame Homes, Inc. v. Wilcox*, 302 Ga. App. 550, 553-54 (2) (691 SE2d 344) (2010) (punctuation omitted) (emphasis supplied); *see* OCGA § 51-12-5.1 (b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."); *cf. Anderson v. Chatham*, 190 Ga. App. 559, 568 (10) (379 SE2d 793) (1989) (affirming an award of punitive damages when there was no question the award was based on a tort claim for intentional infliction of emotional harm).

[29] *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 356 (1) (a) (551 SE2d 765) (2001); *accord Roberts v. JP Morgan Chase Bank, Nat'l Ass'n,* 342 Ga. App. 73, 79 (4) (802 SE2d 880) (2017).

[30] *Williams v. Harvey*, 311 Ga. 439, 442 (1) (858 SE2d 479) (2021) (punctuation and footnote omitted) (emphasis supplied); *accord White v. McGouirk*, 370 Ga. App. 318, 323 (1) (a) (897 SE2d 100) (2024); *see Higbee Co. v. Solomon*, 334 Ga. App. 884, 887-88 (780 SE2d 490) (2015) (explaining that this Court could not consider a

Importantly, this requirement affords the trial court "the opportunity to take remedial action if necessary at the time the alleged error is made, thereby reducing the likelihood that a motion for new trial or appeal will result in reversal of the final judgment."[31]

Here, Cuthbertson alleges that Baker waived her challenge to the verdict form because she did not object to it before the jury rendered its verdict. And Baker did not file a reply brief refuting that claim and providing a specific record citation to the objection. And our review of the record has not revealed that Baker objected to the verdict form prior to the jury's verdict. Additionally, Baker's opening brief did not include a preservation-of-errors section, which is in violation of our rules.[32] As a

---

challenge to an award of punitive damages when, *inter alia*, the appellant did not object to the verdict form before the jury returned the verdict).

[31] *Williams*, 311 Ga. at 442 (1); *see Weldon v. State*, 297 Ga. 537, 541 ( 775 SE2d 522) (2015) ("Failure to raise the issue deprives the trial court of the opportunity to take appropriate remedial action and waives appellate review of any alleged impropriety."); *Higbee*, 334 Ga. App. at 887-88 (explaining that this court could not consider a challenge to an award of punitive damages when, *inter alia*, the appellant did not object to the verdict form before the jury returned the verdict).

[32] *See* CT. APP. R. 25 (a) (3) (5) (requiring an appellant's brief to include "[a] statement of the case that sets out the material facts relevant to the appeal, describes the relevant proceedings below, and *identifies how each enumerated error was preserved for review*, with appropriate citations to the record" (emphasis supplied)).

20

result, Baker waived this claim of error by failing to object to the verdict form at the earliest possible opportunity, and we will not consider it on appeal.[33]

3. Finally, Baker contends the judgment should be reversed because there was insufficient evidence of the "egregious conduct" necessary to authorize the imposition of punitive damages. But again, Baker has abandoned this claim of error.

Setting aside the detailed recitation of the egregious behavior Baker engaged in to gain control over an elderly, cognitively impaired man's finances, assets, and property, Baker fails to present a meaningful argument to support this claim. Indeed, Baker devotes merely two pages to detailing Georgia law regarding the requirements for awarding punitive damages, but then provides only a few conclusory statements as to her version of the evidence without any citations to the record or transcript to

---

[33] *See Higbee*, 334 Ga. App. at 887 ("With respect to the verdict form, in the absence of a specific and timely objection, a party waives error relating to the manner in which questions are submitted to the jury. (punctuation omitted)); *Milum v. Banks*, 283 Ga. App. 864, 870 (2) (642 S.E.2d 892, 897 (2007) ("If the verdict form [was] unclear, [the defendant's] remedy was to seek a special interrogatory to the jury, which he did not do, or to submit his own verdict form . . . or at the least to object to the form used, none of which he did. In the absence of a specific and timely objection, a party waives error relating to the manner in which questions are submitted to the jury." (punctuation omitted)).

support these claims.[34] For example, she claims that, "[t]he *record reveals* that all actions [she took] related to the property at issue were done at the direction of and consent of Moffitt,"[35] and also asserts that she "believed she was acting in the best interest of the parties and with the consent thereof." But Baker fails to cite to *any* evidence presented at trial to support these allegations—not even her own self-serving testimony claiming she had Moffitt's consent to take control over his money, homeowners insurance, and property. And she certainly did not apply any of the Georgia law she recited to the *specific* circumstances of this case *as shown by the record.*[36]

---

[34] *See* Ct. App. R. 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a *specific* reference, the Court *will not search for and may not consider that enumeration.*" (emphasis supplied)).

[35] (Emphasis supplied).

[36] *See Finnegan v. State*, 371 Ga. App. 756, 758-59 (1) (903 SE2d 141) (2024) (deeming a claim abandoned when the appellant cited to the applicable standard of review, but failed "to provide any meaningful argument as to the *specific the facts of this case* or statute at issue" (emphasis supplied)); *Farmer v. Dep't of Corr.*, 346 Ga. App. 387, 394 (2) (816 SE2d 376) (2018) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules." (punctuation omitted)); *see also Yash Sols.*, 352 Ga. App. at 136-37 (1) (b) ("[T]he burden is upon the party alleging error to show it affirmatively in the record." (punctuation omitted)).

We reiterate that "[i]t is not the function of this [C]ourt to cull the record on behalf of a party in search of instances of error."[37] Appellate judges will not and should not "be expected to take pilgrimages into records in search of error without the compass of citation and argument."[38] To the contrary, the burden is on "the party alleging error to show it *affirmatively in the record*."[39] Suffice it to say, Baker failed to satisfy this burden, and thus, she abandoned her contention that the evidence was insufficient to authorize the imposition of punitive damages.[40]

For all these reasons, we affirm the jury's verdict in favor of Cuthbertson.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

[37] *Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009).

[38] *Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010) (punctuation omitted); *accord Vick v. Tower Place, L.P.*, 268 Ga. App. 108, 109 (2) (601 SE2d 348) (2004).

[39] *Bennett*, 305 Ga. App. at 416 (punctuation omitted) (emphasis supplied); *accord Fleming*, 301 Ga. App. at 735.

[40] We take this opportunity to remind counsel that "the requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court." *Daker v. State*, 300 Ga. 74, 76 (2) (792 SE2d 382) (2016) (punctuation omitted). *See* Stephen Louis A. Dillard, *Open Chambers Revisited: Demystifying the Inner Workings and Culture of the Georgia Court of Appeals*, 68 MERCER L. REV. 1, 7 (II) (2016) ("The quickest way to sabotage your appeal is to fail to substantiate legal arguments or key factual or procedural assertions.").